Harry Herendeen, Appellee, v. William Hamilton, Appellant.

**Gen. No. 42,466.**

Opinion filed March 2, 1943.

SABATH & SABATH, of Chicago, for appellant; WILLIAM S. SCHWAB, of Chicago, of counsel.

BARRE BLUMENTHAL, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff's horse, "Mr. Mile," was injured while starting in a race at the Hawthorne Race Track on September 21, 1939. The owner brought suit against defendant, the official starter, an employee of the track, charging negligence in placing the animal on the outside of the mechanical starting gate without applying safety guards for the horse's protection. Trial by jury resulted in a verdict and judgment for plaintiff in the sum of $1,000, from which defendant has taken an appeal.

The starting gate is a mechanical appliance with 12 padded stalls, into which the horses are placed and

from which they are released at a signal given by the starter. The gate is devised to afford protection to horses and to secure an even start. It is a movable device drawn by horses from place to place on the track, depending on the distance of the race, and is set in position at right angle to the track.

Plaintiff's horse had drawn position No. 2 in the race in which he was entered, but because of his unruly conduct defendant ordered him placed on the outside of the starting gate. While one of defendant's assistants was swinging him into position for the start of the race, the horse was caught on an eight inch bolt projecting from the gate, and severely torn. He had to be removed to the stables in a van, where after considerable delay he was attended by a veterinarian, and ultimately removed to plaintiff's farm at Crystal Lake. He died from infection resulting from the injuries sustained. It is conceded that a special pad, described as being some five or six inches thick, two or three feet wide, and six feet long, is provided and was available for the protection of horses placed at the outside of the starting gate. The complaint specifically charged, and plaintiff proved, that defendant failed to attach the safety pad with which the mechanism was supplied, and the jury was evidently of opinion that such failure constituted negligence and was the proximate cause of the injury.

The gist of the action is that defendant, as starter, had exclusive charge and control of the starting gate and of plaintiff's horse at the time and place of the injury, and therefore was alone liable for his negligence. The racing regulations, which were introduced in evidence, support this conclusion. Section 168 provides that ''Horses are in the hands of the Starter from the moment they leave the Paddock until the start is made. When the horses are in the hands of the Starter they are entitled to no further care from their attendants, except that if an accident happens to

a Jockey or his equipment, the Starter may permit the Jockey to dismount and the horse to be cared for during the delay; otherwise, no Jockey shall dismount." Section 169 reads: "Starter.—All orders necessary in securing a fair start shall be given by the Starter." Section 172 contains the provision: "Starting Gate.—Except in cases of emergency, the Stewards consenting, a starting gate, approved by the Stewards, shall be used in starting all races on the flat."

Defendant admits that he had charge of and exclusive control over the horses at the post, but he disclaims liability because, as his counsel say, "Negligence is a breach of duty, and, where there is no duty or breach of duty, there can be no negligence." They argue that he was required to use this particular starting gate which had been approved by the stewards, that it was not of his own choosing, that the gate was in the same condition at the time of the accident as when it was delivered to him, and therefore he should not be liable. This argument does not meet the issue presented. Plaintiff neither alleged nor offered any evidence that the gate itself was defective, but charged that defendant failed to use the safety mat with which the gate was provided. That allegation was not denied. Although defendant made no mention of the pad while testifying, two other witnesses said that it had been used before and after this particular race. Obviously, if the stewards had failed to provide him with a safety device, defendant would have relied on that circumstance as a defense. A photograph of the safety pad, adjusted to its proper position, was introduced in evidence, and two witnesses testified that the projecting bolt which caused the injury was amply covered by the pad when properly applied to the gate. Defendant characterized "Mr. Mile" as "a bad actor," and told his assistant that he had "better watch him." This knowledge of the horse's conduct should have dictated the use of

every reasonable precaution. Since the safety pad was available it was defendant's duty to use it, and his failure to do so, especially in view of his admitted familiarity with the physical obstacles outside the gate, constituted negligence. The court instructed the jury that in order to recover plaintiff had to prove by a preponderance of the evidence (1) that defendant was negligent as charged in the complaint, and (2) that such negligence was the proximate and direct cause of the injury to plaintiff's chattel. We think the verdict is amply sustained by the record under both these charges.

There is an implication all through defendant's argument that inasmuch as he was an employee, and therefore someone's agent, he was not personally liable to plaintiff. However, the law is well settled that where a principal engages an agent to do certain work and take entire control of it, and the principal does not interfere but leaves it entirely with the agent, the agent and not the principal will be liable to third persons for injuries and damages sustained through negligence or unskillful workmanship. *Smith v. Rutledge,* 332 Ill. 150; *Baird v. Shipman,* 132 Ill. 16. This principle of law is applicable to the circumstances of the case at bar.

It is further urged that plaintiff assumed the risk involved. That doctrine is not applicable to the facts presented. The doctrine of assumed risk is generally limited to cases where one voluntarily encounters a known danger or exposes himself to conditions susceptible of possible injury. In the case at bar the plaintiff did not have control of the property nor of the danger to which his horse was exposed. Both of these instrumentalities were entirely under the control of defendant and it was his negligence, as the jury found, which resulted in the injuries sustained.

Lastly it is urged that plaintiff waived his right to bring any action for injuries to his chattel by reason of the following provision on the entry blank of the

race track: "No entry will be received except upon the condition that all disputes, claims and objections arising out of the racing or with respect to the interpretation of the conditions, of any race shall be decided by the officers of this Club, or those whom they may appoint, and their decision upon all points shall be final." This provision clearly applies to rules and regulations of racing and cannot fairly be invoked to relieve any employee of the track from his own negligence.

We find no convincing ground for reversal, and therefore the judgment of the circuit court is affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.