64

Bessie Minters, Appellee, v. Mid-City Management Corporation, Appellant.

Gen. No. 43,815.

Opinion filed April 21, 1947. Released for publication May 5, 1947.

SAMUEL LEVIN and HURFORD & FEIGENHOLTZ, all of Chicago, for appellant.

WILLIAM W. SHER and LEO S. KARLIN, both of Chicago, for appellees; LEO S. KARLIN, of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover damages claimed to have been sustained by her on account of the negligence of defendant in mopping and drying a floor, as a result of which plaintiff slipped, fell and was injured. There was a jury trial and a verdict and judgment in her favor for $13,000. Defendant appeals.

The record discloses that defendant was operating an apartment hotel located at 308–310 East 45th street, Chicago. Plaintiff rented a room on the third floor and had been living there about eleven months before she was injured October 9, 1940. That about 10 o'clock on the morning of that day, she went from her room to the room of another tenant, Helen Jordan, passed down the hallway which was about three feet wide, and as she did so, she saw a man mopping the hallway. She went to Helen Jordan's room, stood in the doorway, talked to her about crocheting, etc., and stayed there about seven or eight minutes. She then turned to go back to her room, took two or three steps, her feet slipped from under her and she fell, as a result of which her right arm was broken and she suffered other injuries.

She testified that she was forty-two years of age at the time; that she moved into the hotel about November, 1939 and had been living there since; at the time she was on relief and that her health was good. That her room was on the hallway but not the same hallway as the room occupied by Helen Jordan. That when she left her room on the morning in question, she first went to Eula Moore's room to telephone and from there to Miss Jordan's room. That as she went

down the hallway she saw a man whom she knew as Green, mopping the hall. That she had seen him do such work for about three or four weeks before; that after she left Miss Jordan's room she took two steps, her feet slipped from under her and she fell. That after she fell, her dress was wet and dirty and there seemed to be slime on the floor, like soap suds; that at the time Green was at the other end of the hall, about twenty feet away; that he had a bucket and mop which he was then wringing. That she was taken by Miss Moore and Miss Jordan into the latter's room and they sent downstairs for Mrs. Shannon, who was the housekeeper of the hotel, and plaintiff was taken to the Provident Hospital and from there to the County Hospital. That the hallway was covered with linoleum; that the man started mopping in front of Miss Jordan's room and at the time she fell he was at the other end of the hall about twenty feet away.

On cross-examination she said she paid $5.50 a week for her apartment and that Frank Irwin lived in the apartment with her but did not pay the rent; that they lived together before and after the accident; that she moved out in 1941 but left him there. That as she stepped out of the door of Miss Jordan's room she glanced at the floor and it looked all right.

Helen Jordan, called by plaintiff, testified that on the morning in question she was talking to plaintiff, who was standing in her doorway; that she saw a little dark fellow mopping the hall with a mop and bucket; that when she first saw him he was right in front of her door; that plaintiff was in her room four or five minutes and started to go to her own apartment, made about two steps, her feet flew out from under her and she fell on her side; that the witness and Miss Moore picked her up and laid her on Miss Jordan's bed; that they sent for someone downstairs and the housekeeper, Mrs. Shannon, came and plaintiff was taken to the hospital; that at the time plaintiff fell she saw the

man about fifteen feet up at the end of the hall with his mop and bucket; that he did not come to help.

Plaintiff and Miss Jordan were the only occurrence witnesses who testified. They further testified as to the light which was in the hall and whether it was such that you could see the floor. Plaintiff testified there was a light in the hallway, a very small night bulb. "You could not see, the light was so dark."

Dr. Apfelbach, called by plaintiff, testified that he was licensed to practice medicine since 1910; graduated from Northwestern Medical School at that time and served as an interne in Cook County Hospital for two years and specialized in surgery and later in bone surgery. That he supervised the treatment of plaintiff in Cook County Hospital; that there were X-rays taken which are in evidence; that there were two broken bones in plaintiff's right forearm—one broken at about the middle of the arm between the elbow and wrist and the other about one and one-quarter inches further up towards the elbow. He then described what was done to the patient and gave his opinion that her condition, after a period of five years from the time she was injured, was permanent.

Thomas Etherly, called by defendant, testified that at the time of the injury he was janitor of the hotel and had been there for about 2 years. At the time he testified, he was in the business of expressing and hauling for himself; that on the morning of the injury he was called from the basement of the building, went to Miss Jordan's room and plaintiff told him she had slipped on the wet floor and had fallen; that he examined the floor at that time to see if it was wet and found it was dry; there was no sign of water at all; that he knew a man by the name of Green who worked at the building about three or four months before plaintiff was injured but had not worked there since that time; that when he went up to Miss Jordan's room

he did not see anyone with a mop and bucket in the hallway on that floor and saw no man going up or downstairs; that Mrs. Shannon, the housekeeper, was there at the time. On cross-examination he said that Green worked there as a janitor's helper for him; that he did not now know where Green was. That all Green did was to handle the garbage; that he had seen Mrs. Shannon, the housekeeper, mop the hallways on Tuesdays and Thursdays.

Mrs. Shannon did not testify. She was subpoenaed by defendant but failed to appear and a writ of attachment was sued but she was never brought into court, the evidence tending to show that they could not find her to serve the writ.

A. M. Rothbar, a court reporter, testified that on November 11, 1940, he went with counsel for defendant, who interviewed plaintiff at her room in the hotel, 310 East 45th street, and after the suit was brought, her deposition was taken before him as a notary public, at which time she was sworn. He then read from his notes which showed what she then said. She was there asked: "Did you notice the floor was damp or wet when you stepped out of this door?" A. "It was damp. Just as I stepped out, I slipped." Q. "When you walked out of the door, did you notice the floor being wet?" A. "I never paid any attention right then. . . . I didn't know the floor was wet until I fell. Had I known it, I would have been more cautious."

The witness further testified that on October 30, 1940, he went with counsel and interviewed Helen Jordan who then lived on Prairie avenue but who lived at 308 East 45th street at the time plaintiff was injured. The witness then read from his notes giving the questions put to the witness and her answers. "Q. There was no other foreign substance on the floor, just damp? A. Just damp. Q. Did you see any streaks on

the floor where she might have slipped? A. I never noticed that after she fell, I never did anything else."

Counsel in their brief say: "The theory of the defendant is that it is not actionable negligence to mop a floor where the plaintiff sustained injury by slipping on a wet floor which she saw and knew was being mopped from its inception before she stepped upon such floor, and further, that plaintiff was guilty of contributory negligence as a matter of law when she stepped upon the wet floor, such condition of the floor being open, obvious and apparent to her." And in support of this theory cite and discuss a number of authorities from this state: *Murray v. Bedell*, 256 Ill. App. 247; *Mack v. Woman's Club of Aurora*, 303 Ill. App. 217; *Blumberg v. Baird*, 319 Ill. App. 642 (Abst.) and cases from other jurisdictions.

In the *Murray* case it was held that the proprietor of a store is not liable to an invitee who, on a rainy day, sustains injuries from slipping and falling by reason of mud and water on the tile floor of the vestibule which extended from the sidewalk to the store, where the evidence further showed that the merchant conducting the store had twice cleaned the entranceway on the morning before the invitee was injured.

In the *Mack* case it was held that it was not negligence as a matter of law, to have the clubroom floor cleaned and waxed. In that case the clubroom was used for dancing and other social functions. The clubroom where the injury occurred was rented to various organizations, one of which was the Woman's Alliance, to which plaintiff belonged. That society had been holding meetings twice a month for more than two years. Plaintiff came to the meeting and was carrying a basket containing dishes and her luncheon. She started to walk towards the kitchen, slipped and fell.

In the *Blumberg* case, plaintiff resided with her husband as tenants of a third floor apartment on East

54th street, Chicago. About 5:30 o'clock on the evening of March 4th, 1938, she slipped and fell on the top step of the stairway, as a result of which she was injured. She sued and had a verdict and judgment for $800. This was reversed by another division of this court. The day was dark and gray, there was rain, snow and sleet falling almost continuously. Towards evening plaintiff started to go to market and walked to the rear entrance of her apartment. She took hold of the railing and started down the back stairway which was covered with a glary, slippery sheet of ice. The janitor on the day in question, because of the rain, snow and ice, had cleaned the stairway three or four times, the last time as late as three or four o'clock in the afternoon.

From what we have said, we think none of these cases is in point. The facts in these cases are greatly different from the facts in the case before us.

If there is any evidence, more than a scintilla, tending to prove the material averments of the complaint then it cannot be held, as a matter of law, that there is no liability where the suit is based on the claim of defendant's negligence. *Libby, McNeill & Libby v. Cook*, 222 Ill. 206. If there be any difference of opinion on the question so that reasonable minds may not arrive at the same conclusion, then the question is one of fact for the jury. *Bale v. Chicago Junction Ry. Co.*, 259 Ill. 476; *Chicago Union Traction Co. v. Jacobson*, 217 Ill. 404; *Louthan v. Chicago City Ry. Co.*, 198 Ill. App. 329; *Kelly v. Chicago City Ry. Co.*, 283 Ill. 640; *Doren v. Boston Store of Chicago*, 307 Ill. App. 456. And even where there is no dispute in the evidence but where inconsistent conclusions may legitimately be drawn the question is also one for the jury. See *The Chicago & Northwestern Ry. Co. v. Hansen*, 166 Ill. 623; *Moore v. Rosenmond*, 238 N. Y. 356; *Richmond & D. R. Co. v. Powers*, 149 U. S. 43, and *Best*

*v. Dist. of Columbia,* 291 U. S. 411; *Turner v. Cummings,* 319 Ill. App. 225, and other authorities cited in the *Turner* case. What is negligence or contributory negligence cannot be defined in exact terms.. Each case must be determined from its particular facts. *Moran v. Gatz,* 390 Ill. 478. In that case plaintiff was walking south across 115th street about 9:15 o'clock in the evening. It was dark and drizzling. Before she stepped off the curb she looked west and saw two or three cars about a block away coming east. She started to walk across on the cross-walk and when she reached a point about four feet from the south curb she was struck by defendant's eastbound automobile and injured. There was further evidence tending to show that she did not again look towards the west. The court, in discussing the Statute (par. 171, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.203]) as to the right-of-way of a pedestrian crossing a street, and considering the facts in the case—whether plaintiff should have again looked towards the west, held that she was not required to do so under the circumstances and that she was not guilty of negligence as a matter of law.

The evidence in the instant case was to the effect that plaintiff glanced at the floor as she was leaving Miss Jordan's room, saw that it was damp, that the light was not good but did not observe that there was soap or other substance on the linoleum. It was the duty of defendant to mop the floor in a manner that would not endanger plaintiff's safety and although plaintiff knew when she went to Miss Jordan's room that the hallway was being mopped, that fact was proper for consideration by the jury in arriving at a conclusion whether plaintiff acted with due care. But we think it was not evidence of her negligence as a matter of law. Upon a consideration of all the evidence in the record, we are of opinion that the question of defendant's negligence and plaintiff's contributory

negligence, were for the jury. The jury found for plaintiff, their finding was sustained by the trial judge, in these circumstances we think we would not be warranted in disturbing the verdict on the ground that it was against the manifest weight of the evidence.

The question of assumption of risk urged by counsel for defendant and argued by counsel for plaintiff, is not involved. There is a distinction between contributory negligence and assumption of risk. As said by the United States Supreme Court in *Seaboard Air Line Ry. v. Horton,* 253 U. S. 492, 503–4: "The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employe, and since it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employes in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employe. The risks may be present, notwithstanding the exercise of all reasonable care on his part."

While "assumption of risk and contributory negligence are distinct and different defenses" in some situations, 35 Amer. Jur. Sec. 295, as held by some courts, "but other courts, while recognizing that the doctrine of assumption of risk in its primary meaning can apply only when a contractual relation exists, have asserted that it may extend beyond contractual relations, and is the doctrine upon which the rule under consideration rests." 45 C. J. p. 1044. No Illinois case is cited in the two authorities just mentioned but our Supreme court in *Schoninger Co. v. Mann,* 291 Ill. 242–246, held that: ". . . the doctrine of assumed risks rests upon and grows out of the contractual relation which exists between master and

servant, (*Pennsylvania Co. v. Backes,* 133 Ill. 255; *Chicago and Eastern Illinois Railroad Co. v. Randolph,* 199 id. 126; *Chicago and Eastern Illinois Railroad Co. v. Heerey,* 203 id. 492;)'' and in *Conrad v. Springfield Ry. Co.,* 240 Ill. 12–17, the court said: ''. . . the doctrine of the assumption of risk is only applicable to cases arising between master and servant. *Schoninger Co. v. Mann,* 219 Ill. 242.'' See also *O'Rourke v. Sproul,* 241 Ill. 576; *Mueller v. Phelps,* 252 Ill. 630; *Chicago and Eastern Ill. R. R. Co. v. Randolph,* 199 Ill. 126; *Weifenbach v. White City Const. Co.,* 201 Ill. App. 521 (abst.). In *Schlemmer v. Buffalo Rochester, etc., Ry. Co.,* 205 U. S. 1, MR. JUSTICE HOLMES in delivering the opinion of the court said (p. 12): ''Assumption of risk in this broad sense obviously shades into negligence as commonly understood. . . . Apart from the notion of contract, rather shadowy as applied to this broad form of the latter conception, the practical difference of the two ideas is in the degree of their proximity to the particular harm.''

Counsel for defendant further contend that ''The argument of plaintiff's counsel before the jury was highly inflammatory and prejudicial and constituted reversible error,'' and point out that plaintiff's counsel referred to the fact that Green, the man who was said to be mopping the hallway was not produced on the trial by defendant; that ''If Green was not working there, why weren't the records brought in to show when Green left? Why wasn't Green brought in? Do they want me to bring in their employees? Do you think I could get them in? They know where Green was. . . . I will tell you why, [defendant did not produce Green] because Green would not come in to put up the kind of a defense that is being put up here.'' Objection to this was sustained. Counsel then continued: ''So, ladies and gentlemen, I do not know why Green was not here. I do not know why the corporate records were not here. . . . We

do not control them. We could not get them, and you have a right under the law, to make certain inferences from the facts. This is evidence that is within the control of a party." We think this argument is subject to the objection made and was not warranted as to the witness, Green. There was no evidence that he was under the control of defendant. But the question is not properly before us for the reason there was no objection to this argument when made. *Forest Preserve Dist. v. Chicago Title & Trust Co.,* 351 Ill. 48. The court said (56): "Complaint is made of improper argument to the jury by appellee's counsel and of improper remarks by the court. As to these complaints, suffice it to say that neither was objected to nor was a motion made to strike out such remarks during the trial, and hence the complaint cannot be here considered." See also *Budek v. City of Chicago,* 279 Ill. App. 410.

It is further contended that the verdict is excessive. We have heretofore briefly mentioned the nature of plaintiff's injuries. The evidence further shows that plaintiff was hospitalized on six different occasions—from October 9 to November 2, 1940, from December 5 to December 14, 1940, from May 6 to May 10, 1941, from September 11 to October 3, 1941, from September 10 to September 26, 1942 and from May 4 to May 7, 1943; that she attended the clinic continuously during the time she was not in the hospital. Obviously plaintiff suffered a great deal of pain and is partially disabled for life. In these circumstances we think we would not be warranted in disturbing the judgment on the ground that it was excessive.

The judgment of the Superior court of Cook county is affirmed.

*Judgment affirmed.*

NIEMEYER, J., and FEINBERG, J., concur.