Henry K. Holsman, Appellee, v. Darling State Street Corporation, and Albert H. Wetten, d/b/a Albert H. Wetten & Co., Appellants.

**Gen. No. 46,581.**

First District, Second Division.

June 28, 1955.

Rehearing denied August 9, 1955.

Released for publication September 13, 1955.

Crowe, Yates, Abrahamson & Fisk, of Chicago, for appellants; Burt A. Crowe, of Chicago, of counsel.

Eckert, Peterson & Lowry, of Chicago, for appellees; Walter W. Ross, Jr., and Herbert C. Loth, Jr., both of Chicago, of counsel.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

The plaintiff sued the defendants for damages caused by his falling on a stairway in a building owned and managed by them. The basis of the plaintiff's action was that the steps of the stairway were negligently maintained by the defendants. In a jury trial the plaintiff recovered the sum of $20,000. The trial court overruled the defendants' motion for judgment not-

withstanding the verdict and for a new trial, and the defendants appeal.

The defendants here contend that the plaintiff has failed to prove that there was any causal relationship between the condition of the stairs and the fall sustained by the plaintiff; that there was no proof the defendants were guilty of negligence or that the plaintiff had exercised due care for his own safety and that the verdict is against the manifest weight of the evidence and is so grossly excessive as to indicate that it was motivated by passion or prejudice on the part of the jury.

The evidence was that the plaintiff was a member of the architectural firm of Holsman and Company, which had rented space for several years on the 16th floor of the Mentor Building. The plaintiff's firm also leased additional space on the 17th floor. There was no elevator service between the two floors, and only one stairway, which consisted of two flights, the first of which led from the 16th floor to a platform and the second led from the platform to the 17th floor. The stairs were in constant use by the plaintiff and other members of his firm. The treads were constructed of white marble and were badly worn. The wear was most evident on both sides of the center line of the stairway and back of the extreme forward part of the tread. Where they were worn the treads were dished and uneven, forming saucers, and were worn down irregularly from one to one and one-eighth inches. The treads were slanted and slippery, and were not level. There was a worn bevel on the nosing of the stairs. The steps were not equally worn; those below the platform and the first step above were in worse condition than the other steps. The fourth step up from the 16th floor was loose. At the time of the occurrence the stairs were clean and there was no obstruction thereon. There was evidence to the effect that the stairs had been in the same condition for four or five years.

On February 28, 1951 the plaintiff was descending from the 17th floor to the 16th floor, and he stepped from the platform onto the first tread with his right foot first. He then started to move his left foot to put it on the next tread below when "something happened." The plaintiff testified that to the best of his recollection "I was going down and I recall very distinctly that I had put my right foot on the tread and that something happened when I undertook to step to the next tread with my left foot. There was some interference with my feet—whether I slipped or whether something else was going on—I can't imagine what it could be, but I can't remember of slipping. I only remember that there was an interference there with the stepping. My left foot didn't go where it was intended to go, and in the rhythm of walking it didn't arrive." Prior to the accident plaintiff had no trouble with his hips or feet, nor had a heart attack, fainting spell or dizzy spell. At the time of the occurrence plaintiff was 84 years old. He was 87 years old at the time of the trial when he testified.

There was evidence in the record from the attending physician that when he first saw the plaintiff immediately after the accident the latter was in a state of shock and was suffering from retrograde amnesia, which is a loss of memory secondary to shock.

A witness for the plaintiff testified that she was on the 16th floor next to the stairs when she heard the plaintiff slip and call out and that she saw him falling down the last flight of stairs.

After the fall a physician was summoned, an ambulance called, and the plaintiff was taken to a hospital.

The only evidence introduced by the defendants was certain photographs of the stairs.

On cross-examination, one of plaintiff's witnesses, a son of the plaintiff who was a licensed architect, testified that the marble steps were of a common, usual type of construction and were properly constructed.

In their answer the defendants admitted that "it was their duty to keep said stairway in a reasonably safe condition." The defendants argue that the use of marble in floors and steps of itself is not negligence, even though the marble is smooth and slippery. There is no point to such argument and it may be disregarded since the issue raised was as to whether or not the maintenance of the stairs in the condition revealed by the evidence constituted negligence on the part of the defendants. The defendants say it did not, and in support of their contention they cite the case of Tryon v. Chalmers, 205 App. Div. 816, 200 N. Y. Supp. 362. In that case the only complaint was that the marble slab which constituted the floor of the platform or landing was worn; and the court held that the existence of worn marble steps is not a defect of such a character as would cause the owner to foresee as a prudent person that the use of such steps with reasonable care would expose the person so using them to unreasonable danger. In that case there is a very strong dissenting opinion, and the rule there laid down in the majority opinion is not in accord with the weight of authority. In Cartier v. F. M. Hoyt Shoe Corp., 92 N. H. 263, 29 A.2d 423, the court holds that where the evidence shows that a stair tread was worn and slippery the question as to whether the wear is so great as to make the stairs hazardous is one of fact, as does the court in Asbury v. Fidelity Nat. Bank & Trust Co., 231 Mo. App. 437, 100 S.W.2d 946. See also Scheirek v. Izsa, 26 N. J. Super. 68, 97 A.2d 167, and Bennett v. Jordan Marsh Co., 216 Mass. 550, 104 N. E. 479. In the instant action, the cases cited by the defendants to the effect that the use of marble in the construction of floors and steps is not negligence per se are not in point any more than are the cases which consider falls on a slick floor.

The defendants further contend that while the fact that 'the plaintiff fell and was injured is undisputed, as is the worn condition of the stairs, the plain-

521

tiff has not presented sufficient evidence showing a causal connection between the defective condition of the stairs and the fall of the plaintiff. In support of that contention they cite Dire v. Balaban & Katz, Inc., 241 Ill. App. 199, where the plaintiff sued to recover damages for injuries sustained by a fall on a stairway in the defendant's theater. The plaintiff's evidence in that case was that the stairway on which the accident occurred was marble and slippery. In the opinion the court calls attention to the fact that there was no evidence in the record that the stairway was improperly or negligently constructed, or that any of the steps were worn or had holes or depressions in them from which an inference could be drawn that the stairway was negligently maintained. The court there held that the plaintiff's testimony failed to show facts or circumstances sufficient to justify an inference that the plaintiff slipped and fell due to the negligence of the defendant. Under the facts in the case before us that case is not in point. In Kidd v. Thomas Gilcrease Foundation, 194 F.2d 129, the court says:

". . . Except possibly by inference, Mrs. Kidd did not testify that she missed her footing on account of any darkness, or by misjudging the width of the treads, or that she reached for a hand-rail or that such a support would have helped her. It may be that her slipping and falling was so sudden and unexpected that she could not honestly testify to any facts or circumstances tending to prove the cause thereof. . . .

"In 38 Am. Jur., Negligence, Section 334, it is said: 'In accord with the rule governing proof of negligence generally, proximate cause need not be established by the testimony of eyewitnesses, nor by direct or positive evidence, but may be proved by circumstantial evidence; it may be determined from the circumstances of the case.'

". . .

522

"We conclude that it was within the province of the jury to decide whether the defendant was negligent and whether such negligence proximately caused the plaintiff's injury, and that the Court erred in directing a verdict for the defendant."

To the same effect are Deschamps v. L. Bamberger & Co., 128 N. J. Law 527, 27 A.2d 3; Cartier v. F. M. Hoyt Shoe Corp., 92 N. H. 263, 29 A.2d 423; and McCrory's Stores Corp. v. Murphy (Tex. Civ. App.), 164 S.W.2d 735.

■ The defendants also assert that the evidence concerning the cause of the plaintiff's fall was purely circumstantial and they contend that circumstantial evidence cannot establish a factual conclusion unless such conclusion is the only one that can reasonably be drawn therefrom. In support of their argument they cite the case of Celner v. Prather, 301 Ill. App. 224. In Lindroth v. Walgreen Co., 407 Ill. 121, the Supreme Court set out the correct rule with reference to circumstantial evidence. The court said:

"In the case of Tennant v. Peoria and Pekin Union Railway Co., 321 U. S. 29, the court, in holding the evidence was sufficient to submit the case to the jury, said, 'The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury.' . . .

"In Devine v. Delano, 272 Ill. 166, and Town of Cicero v. Industrial Com., 404 Ill. 487, this court held the rule to be that reasonable inferences may be drawn from established facts and all that can be reasonably required to establish controverted facts, whether the evidence be direct or circumstantial, is that the evidence creates a greater or less probability leading, on the whole, to a satisfactory conclusion."

In the case before us there was evidence in the record that the stairs were maintained in a condition which

might have caused the plaintiff to fall. The plaintiff was walking down the defective stairs. He testified that he fell because of some interference with his feet on the stairs. That he slipped is supported by the evidence of another witness. There is sufficient evidence from which the jury might reasonably draw the inference that his fall was caused by the worn and defective condition of the stairs.

The defendants also contend that by using the stairs repeatedly the plaintiff had assumed the risk of their defective condition. We are aware of the case of Campion v. Chicago Landscape Co., 295 Ill. App. 225, where the suit brought against the operator of a golf club was predicated upon injuries received by plaintiff who, while playing on the course, was struck by a ball driven by another player. The court discussed the doctrine of assumed risk and called attention to the fact that the holding of the Illinois courts was not in accord with the trend of authority, and held that because of the relation of the parties the defendant had breached no duty owed to the plaintiff and consequently was not guilty of negligence. However, in Minters v. Mid-City Management Corp., 331 Ill. App. 64, a tenant brought an action against the operator of a hotel in which he was residing, based on a fall on a slippery floor in a hallway under the control of the operator and which at the time was being mopped by one of its servants. The defendant raised the question of assumption of risk, and the court said (pp. 73–74):

"The question of assumption of risk urged by counsel for defendant and argued by counsel for plaintiff, is not involved. There is a distinction between contributory negligence and assumption of risk. As said by the United States Supreme Court in Seaboard Air Line Ry. Co. v. Horton, 253 U. S. 492, 503–4: 'The distinction, although simple, is sometimes overlooked. Contributory negligence involves the notion of some fault or breach of duty on the part of the employe, and since

it is ordinarily his duty to take some precaution for his own safety when engaged in a hazardous occupation, contributory negligence is sometimes defined as a failure to use such care for his safety as ordinarily prudent employes in similar circumstances would use. On the other hand, the assumption of risk, even though the risk be obvious, may be free from any suggestion of fault or negligence on the part of the employe. The risks may be present, notwithstanding the exercise of all reasonable care on his part.'

"While 'assumption of risk and contributory negligence are distinct and different defenses' in some situations, 35 Amer. Jur. Sec. 295, as held by some courts, 'but other courts, while recognizing that the doctrine of assumption of risk in its primary meaning can apply only when a contractual relation exists, have asserted that it may extend beyond contractual relations, and is the doctrine upon which the rule under consideration rests.' 45 C. J. p. 1044. No Illinois case is cited in the two authorities just mentioned but our Supreme court in Schoninger Co. v. Mann, 291 Ill. 242–246, held that: '. . . the doctrine of assumed risks rests upon and grows out of the contractual relation which exists between master and servant, (Pennsylvania Co. v. Backes, 133 Ill. 255; Chicago and Eastern Illinois Railroad Co. v. Randolph, 199 Ill. 126; Chicago and Eastern Illinois Railroad Co. v. Heerey, 203 Ill. 492;)' and in Conrad v. Springfield Ry. Co. 240 Ill. 12–17, the court said.: '. . . the doctrine of the assumption of risk is only applicable to cases arising between master and servant. Schoninger Co. v. Mann, 219 Ill. 242.' See also O'Rourke v. Sproul, 241 Ill. 576; Mueller v. Phelps, 252 Ill. 630; Chicago and Eastern Ill. R. R. Co. v. Randolph, 199 Ill. 126; Weifenbach v. White City Const. Co., 201 Ill. App. 521 (abst.). In Schlemmer v. Buffalo Rochester, etc., Ry. Co., 205 U. S. 1, Mr. Justice Holmes in delivering the opinion of the court said (p. 12): 'Assumption of risk in this

525

broad sense obviously shades into negligence as commonly understood. . . . Apart from the notion of contract, rather shadowy as applied to this broad form of the latter conception, the practical difference of the two ideas is in the degree of their proximity to the particular harm.' "

 In the case before us, under the Illinois decisions the doctrine of assumption of risk is not applicable. The question as to whether the plaintiff was guilty of contributory negligence in this case was a question of fact for the jury. It was properly raised and properly presented to the jury. Where the suit is based on the defendant's negligence, if there is, as there was here, evidence in the record tending to prove the material averments of the complaint as to such negligence, the question is also one for the jury. Chicago City Ry. Co. v. Nelson, 215 Ill. 436; Chicago Union Traction Co. v. Jacobson, 217 Ill. 404. Here the evidence of the plaintiff was all that was submitted to the jury. The verdict was not against the manifest weight of the evidence.

██ The verdict is not excessive. The uncontradicted testimony is that the plaintiff suffered a severe fracture of the left hip, as well as a fracture of a rib; that the hip fracture required surgery and the insertion of nails or screws to unite the bone fragments; that he was in the hospital and a nursing home for over a month; that he was required to use a wheel chair and subsequently crutches, and now uses a cane; that he still has a limitation of motion in the muscles of his leg and that the use of the cane is required; that the condition will be permanent and the plaintiff will always have a shorter leg than he had before the accident; that from the time of the accident to the time of the trial plaintiff had suffered a great deal of pain. Plaintiff's medical bills amounted to approximately $5,000, and he lost six or seven months' time from his office where he had a drawing account of $1,000 per

month. There is nothing in the record to indicate passion or prejudice on the part of the jury. We have repeatedly held that damages awarded to a plaintiff in a personal injury case will not be set aside unless so palpably excessive as to indicate passion or prejudice on the part of the jury. Garner v. Burns Mid-Town, Inc., 346 Ill. App. 162; Levanti v. Dorris, 343 Ill. App. 355; Gorczynski v. Nugent, 335 Ill. App. 63; Hannigan v. Elgin, J. & E. Ry. Co., 337 Ill. App. 538; Liby v. Town Club, 5 Ill.App.2d 559.

We find no error in the record. The judgment of the superior court of Cook county is affirmed.

Judgment affirmed.

ROBSON and SCHWARTZ, JJ., concur.