420                                           344 Mass. 420

Potter *v.* John Bean Division of Food Machinery & Chemical Corp.

ROBERT POTTER *vs.* JOHN BEAN DIVISION OF FOOD
MACHINERY AND CHEMICAL CORPORATION
(and a companion case[1]).

Suffolk.   February 5, 1962. — May 24, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Negligence,* Automobile wheel balancer, Contributory. *Practice, Civil,*
    Amendment, Parties, Requests, rulings and instructions. *Evidence,*
    Opinion: expert; Presumptions and burden of proof. *Law of the Case.*

There was no error in an action in allowance, after a verdict for the plain-
    tiff, of a motion by the plaintiff to substitute the correct name of a
    corporate defendant which had actually been before the court from the
    outset of the action and had participated in the trial.   [423–424]
Denial of a motion by the defendant in an action for personal injuries to
    amend the answer to set up the defence of assumption of risk was
    within the judge's discretion.   [424]
Error in the admission of opinion testimony by an expert in response to a
    lengthy hypothetical question was not shown where the objections to
    the testimony related to matters going merely to its weight rather than
    its admissibility.   [424]
In an action for personal injuries by an employee of an automobile repair
    establishment against the manufacturer of an automobile wheel balancer,
    a disc attached to the wheel of an automobile by hooks and safety clamps
    and then rotated with the wheel, a finding of negligence of the defendant
    toward the plaintiff was warranted, and a finding of contributory negli-
    gence on the part of the plaintiff was not required as matter of law, by
    evidence of the circumstances in which the disc came off an automobile
    wheel while being rotated at high speed and struck the plaintiff, together
    with opinion testimony by an expert that "a failure occurred in the
    weakest section . . . caused by . . . improper design or machining."
    [424–425]
An instruction in the charge to the jury in an action for personal in-
    juries, that the defendant had the burden of proving contributory negli-
    gence on the part of the plaintiff, correctly stated the whole practical
    effect of G. L. c. 231, § 85, and cured any error in an earlier portion of
    the charge dealing with the presumption of the plaintiff's due care.
    [425–426]
It was within the discretion of the judge at the trial of an action for per-
    sonal injuries whether he would leave the subject of contributory negli-

---

[1] The companion case is by Julius Savicki against the same defendant.

344 Mass. 420                                              421

Potter *v.* John Bean Division of Food Machinery & Chemical Corp.

gence to the jury with only general instructions or would also deal with a specific matter involved in that subject as requested by the defendant. [426]

Instructions to the jury as to their belief or disbelief of opinion testimony of an expert witness adequately covered the subject matter of an instruction requested by a party and required overruling of an exception to the denial of the requested instruction. [426–427]

Direction of a verdict for a corporation as defendant in an action did not preclude, on the ground of the "law of the case," liability of the corporation as substituted defendant in another action by the same plaintiff for the same cause, which, with a companion action by another plaintiff, had been consolidated for trial with the action in which the verdict was directed. [427]

Two ACTIONS OF TORT. Writs in the Superior Court dated August 21, 1957, and September 4, 1957.

The actions were tried before *DeSaulnier, J.*

*James D. Casey* for the defendant.

*Joseph F. McGaffigan* for the plaintiffs.

SPALDING, J. These are two actions of tort brought by Robert Potter and Julius Savicki against John Bean Division of Food Machinery and Chemical Corporation (the substituted defendant, hereinafter called Bean). The plaintiffs alleged negligence on the part of Bean "in the designing, manufacturing, assembling, handling or distribution" of its product, a "John Bean On-The-Car Wheel Balancer." These two actions were consolidated for trial with a companion action by Savicki against Food Machinery and Chemical Corporation, based on allegations that were identical with those by Potter and Savicki against Bean. A motion for a directed verdict in favor of Food Machinery and Chemical Corporation in the companion case was granted; similar motions in the actions against Bean were denied, and the jury returned verdicts for each plaintiff.

There was evidence of the following: On or about April 21, 1955, the plaintiffs were employed by Mark Jewell, Inc. (Jewell), which was engaged in repairing automobiles. At about that time Jewell purchased a "John Bean On-The-Car Wheel Balancer" from Bean's factory representative. The balancer consists of a disc which is attached to the car wheel (while still on the car) which is spun by a motor at

speeds up to seventy miles per hour. The disc is attached to the wheel by means of four hooks, covered by safety clamps. Between April 21, 1955, and August 9, 1956, the date of the accident, the balancer was used by various employees of Jewell (including Savicki) several hundred times. An instruction pamphlet was supplied with the balancer and this was read by Savicki. A demonstration as to the proper use of the balancer was given to Savicki by a representative of Bean.

On August 9, 1956, Savicki had occasion to use the balancer on the left front wheel of a car brought to Jewell's for repair. While doing so Savicki instructed Potter, a fellow employee, in the use of the balancer. Savicki placed the disc on the wheel, and also applied the safety clamps, which were tightened by means of a ''thumb screw.'' ''He kept hitting gently the metal thumb screw which fitted into the safety clamp with . . . [a rawhide mallet] as he had done hundreds of times before, even though he realized that this might damage the threads on the screws which was the device which held the hooks onto the wheel and that if the safety screws were damaged they could not properly hold the hooks on the rim and that without the hooks the disc would not stay on the wheel.'' After mounting the disc, Savicki started the spinner but, when the velocity of the wheel attained a speed of thirty to thirty-five miles per hour, it started to vibrate; this had never happened before. Upon stopping the spinner, Savicki noticed that two thumb screws were loose. He reapplied the disc and safety clamps as he had done before, gently striking the thumb screws on the safety clamps with a mallet, ''still knowing it might damage the threads on the screw.'' Savicki again started the spinner but, when it attained a speed of around fifty-five miles per hour, it began vibrating ''very badly.'' The spinner was stopped and it was found that the four safety clamps had become loose. Savicki again took off the disc but found nothing that was broken. He put the disc back for a third time in the same manner and again started the spinner. He observed no vibration and succeeded in bal-

ancing the wheel. Savicki then unbalanced the wheel and asked Potter to try to balance it. "As Potter reached to put his hand on the center knob of the disc, the disc which was rotating at about 50–55 miles per hour suddenly came off the wheel and struck both plaintiffs."

One Stern, an expert called by the plaintiffs, testified in substance as follows: He had examined the balancer shortly before trial, at which time some of the parts (the four safety clamps) were not available. Over the defendant's objection and exception, he stated that the balancer was faulty in design or manufacture. He was permitted, over the defendant's objection and exception, to answer a lengthy hypothetical question as to what in his opinion "caused this disc or balancing device to fly off the wheel." His opinion was that "a failure occurred in the weakest section of the bolt . . . caused by the improper design or machining of this section here with the notches."

The defendant's expert testified that in his opinion "the leg assembly had been broken by a severe blow and not as a result of metal fatigue."

1. There was no error on the part of the trial judge in allowing, after verdict, the plaintiffs' motions to substitute John Bean Division of Food Machinery and Chemical Corporation for John Bean Company, Inc., as defendant. What was said in *Eaton* v. *Walker*, 244 Mass. 23, 29, is pertinent here: "The allowance of the amendment, assuming that it brought in an entirely new party defendant in place of the one first named, was within the power of the court provided it was found by the court, as it must have been in order to allow the amendment, G. L. c. 231, § 138, . . . that its purpose was to enable the plaintiffs to sustain the action for the cause for which it was intended to be brought. G. L. c. 231, § 51. Under our liberal practice as to amendments that is too well settled now to admit of discussion." See *Peterson* v. *Cadogan*, 313 Mass. 133. It is not difficult to understand why the amendment became necessary, for there was obviously a mutual misunderstanding between the parties as to the precise name of the appropriate de-

fendant. At the pre-trial hearing it was agreed that the balancer "was manufactured by the John Bean Co., Inc., which is a subsidiary and division of Food Machinery and Chemical Corporation." It became apparent during the course of the trial that the proper name of the defendant was Food Machinery and Chemical Corporation.[1] The effect of the amendment was to substitute the correct name of the corporation originally intended to be sued and served for the incorrect name. The amendment, therefore, was inconsequential. The substituted defendant was in fact before the court from the outset and through counsel fully participated in the trial of these actions.

2. The denial of the defendant's motion to amend its answer so as to set up the defence of assumption of the risk in each action reveals no error of law. The allowance of such an amendment is discretionary with the trial judge. *Stoneham Trust Co.* v. *Aronson,* 296 Mass. 154, 156.

3. The exceptions to testimony by Stern, the plaintiffs' expert, must be overruled. It would unduly prolong this opinion to no purpose to set forth this evidence in detail. One hypothetical question comprises three pages of the record. The principal objections to this evidence are that the witness's opinions were allegedly based on facts not in evidence, on hearsay, and on the use of an ordinary wooden ruler to measure a thickness of "40 thousandths of an inch." But we are of opinion that such infirmities as there might have been in the testimony of Stern, whom the judge could find to be qualified, were matters going to its weight rather than its admissibility. *Finnegan* v. *Fall River Gas Works Co.* 159 Mass. 311, 312–313. *Kuklinska* v. *Maplewood Homes, Inc.* 336 Mass. 489, 495–496.

4. Inasmuch as Stern's testimony as to the cause of the accident was properly admitted, it follows that the defendant's motions for directed verdicts were rightly denied. Stern's testimony was sufficient to take the case to the jury.

---

[1] The cases have been presented on the footing that "John Bean Division of Food Machinery and Chemical Corporation" and "Food Machinery and Chemical Corporation" are one and the same.

While he admitted on cross-examination that there were other possible causes of the accident beside improper "design or machinery," the plaintiffs are not bound to exclude every possibility that the accident may have happened through some cause other than the negligence of the defendant. *Bennett* v. *Cohen,* 310 Mass. 714, 715. Whether the plaintiffs were guilty of contributory negligence because of the failure of Savicki to follow instructions on the use of the balancer, and because of Potter's willingness to remain near the place of danger, were questions properly submitted to the jury.

5. The defendant contends that the judge erred in instructing the jury that the presumption of the plaintiffs' due care "remains with them until such time as there is evidence presented to you by the defendant that you believe that they are not in the exercise of due care."[1] Directly following this statement the judge charged that "the defendant must show . . . by . . . [a] fair preponderance of credible evidence that the plaintiffs were guilty of contributory negligence." This served to correct any error in the prior statement. It was said by Lummus, J., in a concurring opinion in *Brown* v. *Henderson,* 285 Mass. 192, 196–197, "[I]f the burden of proof is correctly stated to the jury, there can be no reversible error in dealing with the presumption of due care, whether the judge adopts what seems the better course of refusing to mention it at all, or, as the judge did in this case, indulges in what must needs be an academic discussion of its theoretical operation; and this, no matter whether that discussion conforms to the true theory of presumptions or not." The concurring opinion in *Brown* v. *Henderson, supra,* was adopted by this court as stating "the true effect of the statute" in *Perry* v. *Boston Elev. Ry.* 322 Mass. 206, 210. Thus, when the judge told

[1] A similar instruction was upheld in the majority opinion in *Brown* v. *Henderson,* 285 Mass. 192. This can no longer be regarded as a correct statement of the law. Later cases establish that a presumption remains until evidence has been introduced which would warrant a finding contrary to the presumed fact. *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 302, and cases there collected. *Jacquot* v. *Wm. Filene's Sons Co.* 337 Mass. 312, 316.

the jury that the burden of proving contributory negligence was on the defendant, he correctly stated the whole practical effect of G. L. c. 231, § 85. In charging with respect to this statute it is better to omit any reference to the presumption for, as we said in the *Perry* case, "to attempt a discussion of the so called presumption would do the plaintiff no additional good, but would tend to complicate the charge and confuse the jury" (p. 210).

6. After the judge's charge the defendant orally requested the judge to charge as follows: (1) "to give some instructions on the plaintiffs' duty to follow instructions if they were given instructions. In other words, if they failed to follow the instructions then they are negligent"; (2) "that even though . . . [experts] are permitted to testify . . . [the jury] can still consider the qualifications on a factual basis in passing on the amount of weight to give to . . . [their] testimony." To the refusal to so instruct, the defendant excepted. We could dispose of these exceptions on the ground that the requests have no standing since they were not in writing and were not presented before the closing arguments, and no special leave appears to have been granted to present them later (see Rule 71 of the Superior Court [1954]); but we shall deal with them on the merits.

As to the first request, as indicated above, the judge had charged the jury on the subject of contributory negligence. It was a matter within his discretion whether he would leave that issue to the jury with general instructions or would deal with it in more detail. *Barry* v. *Panich*, 324 Mass. 162, 165.

Turning to the second request, it is to be noted that the judge had charged the jury as follows: "[Experts] are allowed to come in and express opinions only as an aid to you in arriving at the truth, and they are clothed in no greater garments of truth than the average witness that appears before you. You can believe all of their testimony; you can believe part of it and disbelieve part of it; or you can disbelieve all of the expert's testimony, just as you can with respect to every other witness that comes before you

and testifies.'' This instruction sufficiently covered the matter of expert testimony. The exceptions to the refusal to give both requests must be overruled.

7. The defendant argues that, since there was a directed verdict (to which action no exception was taken) for the defendant Food Machinery and Chemical Corporation in the separate action brought by Savicki, this became the ''law of the case'' and hence there can be no liability as to it, the substituted defendant in the present action. This contention cannot prevail. There was, to be sure, an inconsistency in directing a verdict for Food Machinery and Chemical Corporation in the separate action and in permitting the jury to return a verdict for the same plaintiff (Savicki) in the present action. But the rule of the law of the case presented no obstacle to the action of the trial judge. He was not obliged to apply that doctrine, which is permissive and not mandatory. ''His was the power to act to the end that a just result be reached.'' *Shine* v. *Campanella & Cardi Constr. Co.* 342 Mass. 150, 152–153. *Peterson* v. *Hopson,* 306 Mass. 597, 601–603. *Gleason* v. *Hardware Mut. Cas. Co.* 331 Mass. 703, 709–710.

*Exceptions overruled.*