The **INDEPENDENT NAIL AND PACK-ING CO., Inc.**, Defendant, Appellant,

v.

Kenneth **MITCHELL**, Plaintiff, Appellee.

No. 6354.

United States Court of Appeals
First Circuit.

April 13, 1965.

Thomas H. Mahony, Boston, Mass., with whom Edward F. Mahony, Boston, Mass., was on brief, for appellant.

Edward M. Swartz, Boston, Mass., with whom Joseph Schneider, Boston, Mass., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Senior Circuit Judge (by designation).

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered on a jury's verdict on January 27, 1964, for plaintiff-appellee, in the total amount of $40,209.75, including interest, for damages for personal injury.

Plaintiff was injured on August 25, 1959, while assisting in the construction of a pole barn near Newton, Illinois. A pole barn is not unlike an ordinary barn except that it is secured to the earth by large poles set into the ground, rather than by being anchored to a concrete foundation. Work was begun before the first of August. The first days were spent laying out the barn and sinking the poles. Thereafter trusses, siding, a roof, and chicken roosts were added. In adding the siding and the roosts plaintiff and the two other workers involved used pole barn nails manufactured by defendant. These nails are five or six inches long, are made of a particularly hard steel, and have two inches of annular

ridging on the end to hold them firmly in the wood. Plaintiff had not worked with this type of nail before. Apparently the three men spent five or six days actually using pole barn nails, using ten to fifteen pounds of them a day. When they were hammering the nails into the softer wood of the poles, about three percent would break off, about an inch from the head. The free part of the nail would "zing" through the air. When the men began hammering the nails into the harder green oak siding, about five percent would break. Neither the plaintiff nor the other two workers wore safety glasses. Apparently someone mentioned to Finley, the farmer building the barn, that the nails were breaking, but he did nothing.

On August 25 plaintiff was engaged in adding a chicken roost of green oak. As he struck one nail ("right square on the head," he says) a portion of it broke off and struck him in the right eye, blinding him in that eye. The other portion of the nail was left in the wood, standing straight up.

Plaintiff brought suit below relying on claims in both breach of warranty and negligence. The trial court granted defendant's motion for a directed verdict on the claim of breach of warranty and the case was submitted to the jury on the negligence issue.

██ Since jurisdiction in this action is founded on diversity of citizenship, we must apply the same law as a Massachusetts court would apply. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Illinois law, the law of the place of the injury, therefore applies as to substantive issues, Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Medeiros v. Perry, 332 Mass. 158, 124 N.E.2d 240 (1955), while Massachusetts law applies as to burden of proof of contributory negligence, Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645 (1943); Gregory v. Maine Cent. R. Co., 317 Mass. 636, 639–640, 59 N.E.2d 471, 474, 159 A.L.R. 714 (1945).

██ Defendant first raises some question as to whether the lack of privity between plaintiff and defendant precludes this action. It does not, if negligence has been proved, since Illinois allows suit where the nature of the object is such that it may become inherently or imminently dangerous if it is negligently manufactured. Rotche v. Buick Motor Co., 358 Ill. 507, 513–514, 193 N.E. 529, 532 (1934) (per curiam) (dictum); Day v. Barber-Colman Company, 10 Ill.App. 2d 494, 135 N.E.2d 231 (1956). It would seem to us a pole barn nail is such an object; we have found no Illinois case to the contrary.

██ Defendant's contention that plaintiff assumed the risk is without merit. Illinois does not recognize that defense except in the master and servant relationship. B. Shoninger Co. v. Mann, 219 Ill. 242, 76 N.E. 354, 3 L.R.A.,N.S., 1097 (1905); Conrad v. Springfield Consol. Ry. Co., 240 Ill. 12, 88 N.E. 180 (1909); Holsman v. Darling State Street Corp., 6 Ill.App.2d 517, 128 N.E.2d 581 (1955). Defendant cites the case of Herendeen v. Hamilton, 317 Ill.App. 644, 47 N.E.2d 335 (1943), as containing language to the contrary. We do not agree with it. See Holsman v. Darling State Street Corp., supra, 128 N.E.2d at 585. Since it is not disputed by the defendant that the master and servant relationship was not here involved, defendant's contention must fail.

██ Defendant's next contention, that as a matter of law the plaintiff was guilty of contributory negligence, carries considerably more weight. The procedural aspects of contributory negligence, most importantly the burden of proof, are governed by Massachusetts law, and in that state the burden of proof rests upon the defendant. Gregory v. Maine Cent. R. Co., supra, at 639–640, 59 N.E.2d at 474. The substantive aspects of the defense are governed by the law of Illinois, and in that state contributory negligence is a complete bar. Dee v. City of Peru, 343 Ill. 36, 174 N.E. 901 (1931).

It should first be noted that there is a distinction between assumption of the

risk and contributory negligence. As was said by Mr. Justice Holmes in the case of Schlemmer v. Buffalo, Rochester, & P. Ry., 205 U.S. 1, 12, 27 S.Ct. 407, 51 L.Ed. 681 (1907), the difference is one of proximate degree.:

"[T]he practical difference of the two ideas is in the degree of their proximity to the particular harm. The preliminary conduct of getting into the dangerous employment or relation is said to be accompanied by assumption of the risk. The act more immediately leading to a specific accident is called negligent.

\* \* \*"

In short, a risk may be assumed non-negligently. It is clear that the courts of Illinois recognize this distinction. Minters v. Mid-City Management Corporation, 331 Ill.App. 64, 72 N.E.2d 729 (1947). On the facts of the case before us, it is arguable that the plaintiff did assume the risk. But that is not the question to be decided; the question is whether, beyond that, he acted negligently.

■■■■ Counsel for defendant have directed our attention to a group of Illinois cases which hold that one who knowingly exposes himself to danger without taking precautions commensurate to the known danger is guilty of contributory negligence as a matter of law. Dee v. City of Peru, supra; Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, 170 N.E. 247 (1930); Ames v. Terminal R. Ass'n of St. Louis, 332 Ill.App. 187, 75 N.E.2d 42 (1947). We do not think these cases are controlling. As was pointed out in the case of Davis v. Springfield Lodge No. 158, etc., 24 Ill.App.2d 102, 164 N.E.2d 243 (1960), most important in these cases is the requirement of *knowing* exposure to danger. While we will admit that the plaintiff here must have been aware of the possibility of his being struck a glancing blow by a flying nail, we cannot hold as a matter of law that Mitchell must have known that the flying portion of the nail would cause him severe bodily injury, particularly that it would blind him in one eye. In fact, we are by no means convinced that severe injury is the necessary, or even the probable, result of the breaking of a pole barn nail. We think that the question of contributory negligence was properly left to the jury and that they were entitled to believe plaintiff's statement that he did not think there would be any danger in continuing. It is also relevant that plaintiff's two co-workers, who, in varying degrees, were experienced in carpentry and construction, also continued at their work without taking precautions.

Having precluded that plaintiff is not barred by contributory negligence under Illinois law, it remains to determine whether, under Massachusetts standards, it was proper to submit to the jury the question of contributory negligence. We think we are bound in the resolution of this question by the Massachusetts case of Potter v. John Bean Div. of Food Mach. & Chem. Corp., 344 Mass. 420, 182 N.E.2d 834 (1962). There an experienced employee of an automobile repair shop was demonstrating to a fellow employee how to operate a wheel balancer. The wheel balancer involved was clamped onto the wheel, and the wheel was then spun at high speeds with the balancer on it. Twice the experienced employee hammered the screws on the balancer tight, knowing he might thereby strip the screws. Twice the wheel had to be stopped because of the vibration that set in. The third time the balancer worked properly. When the other employee attempted to do the balancing a fourth time, the balancer flew off, striking both employees. A jury's verdict for both of them was upheld, the verdict being based on negligent manufacture of the balancer. If the Massachusetts court seems more willing than some Illinois courts to leave the question of contributory negligence to the jury, it should be pointed out that in Illinois, unlike Massachusetts, burden of proof as to contributory negligence is on the plaintiff. Wilson v. Illinois Cent. R. Co., 210 Ill. 603, 71 N.E. 398 (1904). Following the spirit of the John Bean case, we cannot say the jury was wrong on the issue of contributory negligence. If there is a difference be-

tween that case and the present one, it would seem to us the present one gives more reason for upholding the jury's verdict.

 The defendant also contends that the evidence did not justify submission of the issue of liability to the jury. We think the contrary was true. Defendant's assistant plant manager, one Alan D. Stone, testified that three probable causes for the nail's breaking were improper hammering, improper manufacture, and inclusions of slag in the material used to make the nails. An expert witness, Irving Berman, a graduate metallurgist of the Massachusetts Institute of Technology, testified that, in his opinion, failure of the nail was caused either by improper selection and use of the material, or by improper manufacture, or both. On cross-examination he further testified that the material used (C 1040 carbon steel) was improper because it lacked such elements as nickel or molybdenum; that quality control of the material was improper; and that a heat treatment used in manufacturing the nail was improper. With regard to the latter, he explained that when steel is heated to a high degree of hardness with no other alloying elements in it and subjected to the purpose for which the nail was designed, "you are treading on dangerous territory in my opinion." This testimony was uncontradicted, and the jury certainly was entitled to believe it.

 Finally, defendant contends that the trial court improperly excluded certain testimony and improperly admitted other testimony. This is primarily a question for the trial judge, and we will not reverse his ruling unless it is manifestly erroneous. Spring Co. v. Edgar, 99 U.S. 645, 25 L.Ed. 487 (1878); A. Belanger & Sons, Inc. v. United States, 275 F.2d 372 (1st Cir. 1960). We do not think that was the case here. The question put to witness Stone on cross-examination went beyond his field of mechanical engineering. Witness Berman was well qualified as a metallurgist; witness

Baroni was not. On these questions the trial court did not abuse its discretion.

Judgment will be entered affirming the judgment of the district court.

ALDRICH, Chief Judge (concurring).

I agree with much of Judge HARTIGAN'S opinion, and the result, but do not take quite the same road. As the Massachusetts court has pointed out, and presumably the law of Illinois is the same, there are cases where, as matter of law, any evidence of contributory negligence is just as strong as the evidence which would charge the defendant, so that the plaintiff is necessarily unable to recover. See Lajeunesse v. Tichon's Fish and Fillet Corp., 1952, 328 Mass. 528, 530, 105 N.E.2d 245. If, as Judge HARTIGAN suggests, knowledge of the exposure to danger is the test, I would be unable to accept findings in this case which would charge the defendant, but not charge the plaintiff. Indeed, I believe any distinction should be that the plaintiff should have been more aware than the defendant of whatever danger there was. Even if defendant's evidence that it has never had a claim before should be rejected, there is no evidence to the contrary. From the plaintiff's own witnesses comes the testimony that he had been working for three weeks with the nails continually breaking, and as one witness put it, whizzing and zinging. To the extent that this produced a possibly dangerous condition the plaintiff, in a very literal sense was right on the firing line. There was no hidden danger of which defendant might be in a superior position to know.

 However, even with full knowledge of a possibility of danger, in some situations a plaintiff may not be guilty of contributory negligence though having equal knowledge with the defendant. This may occur when the exposure to the danger occurs as a result of the plaintiff's employment. See, e. g., Winchester v. Solomon, 1947, 322 Mass. 7, 75 N.E.2d 653; cf. Silver v. Cushner, 1937, 300 Mass. 583, 16 N.E.2d 27. In New York Central R. R. Co. v. Moynihan, 1

Cir., 1964, 338 F.2d 644, we took special note that it was plaintiff's fault, not his employer's that he was working near the known danger. Id. fn. 2. I think the jury could find that the manufacturer should have anticipated that employees might, through economic compulsion, as here, be reasonable in running the risk that it had created.

WOODBURY, J., concurs in this opinion.