## McKAY *v.* IRVINE.

*(Circuit Court, N. D. Illinois.* February 22, 1882.)

1. HORSE-RACING—NEGLIGENCE—FOUL RIDING—LIABILITY OF OWNER.
   The owner of a horse entered for a race takes all the risks incident to the race; and if a horse is intentionally fouled, or purposely runs against or interferes with a competing horse in the race by the rider, the employer of such rider is liable for damages for any injury which results.

2. SAME—FOUL RIDING, WHAT IS—RIDERS—RULE OF DUTY.
   If a jockey attempts to take the track ahead of another horse before his horse is a clear length ahead of the other horse, or if he crowds the other horse, so as to impede him, or compels his jockey to hold him in, or change his course to avoid a collision, it would be foul riding; and the fact that the rider who attempts a foul runs as great risk to himself and his horse as he imposes on his competitor, will not justify him in attempting a foul.

3. TRIAL—CONFLICT OF EVIDENCE—PROVINCE OF JURY.
   In case of a conflict of evidence the credence to be given to the testimony of a witness is for the jury to determine.

4. MEASURE OF DAMAGES.
   In an action for damages for the death of a horse, caused by the collision of a competing horse in a horse-race, the damages must be estimated at what is shown by the evidence to have been the value of the horse killed.

*M. O. Lewis* and *W. I. Culver,* for plaintiff.

*S. K. Dow,* for defendant.

BLODGETT, D. J., *(charging jury.)* Gentlemen of the jury, this is a suit for damages alleged to have been sustained by the plaintiff from the wilful or negligent act of the defendant's servant. The plaintiff claims that on the twenty-fifth of June last he was the owner of the thoroughbred stallion known as "Wolverton;" that this horse was

entered for a race that day at the Chicago Driving Park, near this city, competing with eight other horses for a purse offered by the Driving Park Association; and that the defendant was also the owner of a mare called the "Belle of Nelson," entered in the same race; that in the second heat of this race the defendant's mare, ridden by his servant or employe, was, by intention or negligence of the jockey or rider for the defendant, foully ridden against the plaintiff's horse, whereby the latter was thrown and killed.

The defendant denies that his mare was either intentionally or negligently ridden against the plaintiff's horse, and denies that the death of the plaintiff's horse was caused by any act of his jockey or rider.

If you have no knowledge of horse-racing, other than that developed by the proof in this case, you must see that in a race like this a horse is necessarily exposed to great hazard and peril. In the first place the horses are mostly ridden by boys, who can do little in the way of guiding or controlling them, and whose chief office would seem to be to urge them with whip and spur to the top of their speed; and in the second place the horses themselves are high-strung, nervous, and excitable, and with so many competitors as there were in this race, on a comparatively narrow track, not running in a straight line, but around a parallelogram with curved or rounded corners, so that at least four turns must be made, there must be great risk of collision, especially at these turns, even when the horses are fairly and carefully ridden; and those risks the owner of a horse, starting in a race, must be presumed to take,—that is, he takes all the risks of accident incident to the race. But if a horse is intentionally fouled, —if it is purposely run against or interfered with by the rider of another horse,—the employer of the rider who so fouls him or interferes with him is liable for damages; and, so too, each rider is bound, as far as possible, to keep his horse from fouling with another, and his employer would be liable for any palpable or clear act of negligence, whereby a foul was occasioned; but I can hardly imagine a case where there would be liability for negligence except where the rider was incompetent. The owner starting his horse in a race is bound to have a rider who is competent, to such an extent as is necessary, to sufficiently manage and control the horse for the purposes of the race, and the owner who starts his horse in a race with a rider incompetent to perform the duties of so guiding and controlling the horse, might be held liable for the consequences of his rider's incompetency. This question, however, does not arise in this case, as

there is no charge that the defendant's jockey was not competent for the service and duty assigned to him.

The foul complained of in this case is charged to have consisted in an attempt on the part of the rider of the Belle of Nelson to take the track ahead of Wolverton before his mare was far enough ahead of Wolverton to enable her to draw in front of him without collision. You can readily see if a jockey attempts to take the track ahead of another horse before his horse is a clear length ahead of the other he runs great risk of colliding with the other horse; and if he does so collide, or if he crowds the other horse so as to impede him or compel his jockey to hold him in or change his course for the purpose of avoiding a collision, it would be unfair, and therefore would be foul riding; but there may be a case where there is a clear space between the horses sufficient to justify the foremost one in attempting to take the track, and yet at the moment the jockey of the foremost horse attempts the maneuver the rear horse may be pushed or rushed suddenly up, in which event a collision may occur by the act of the rider of the rear horse.

You will also bear in mind that so far as danger is concerned the rider who attempts a foul runs as great risk to himself and his own horse as he imposes on his competitor, because it is impossible to tell in advance who may be the sufferer. But this fact does not justify a jockey in attempting a foul on the ground that he risks as much as his competitor.

So much as to the rule of duty and obligation which each rider and the employer of the rider assumes in a race like this, and is bound to observe towards his competitor.

The plaintiff has given proof tending to show that his horse had the second position in the second heat—that is, that he was started under the wire next to the horse that had the pole, and that he maintained that position and was a little behind Nero, who had the pole, and that the Belle of Nelson was a little ahead of the plaintiff's horse up to and at the first turn, which was from 150 to 200 yards from the wire; that at this point the Belle of Nelson was reined in to the left onto the plaintiff's horse, and, in attempting to pass ahead of him, tripped him, and he fell and was fatally injured. The testimony on the part of the plaintiff tends to show this state of facts. This testimony comes from persons who were spectators of the race, and who, from different positions or stand-points of observation, saw, or think they saw, the movements of each horse, and saw acts on the

part of defendant's rider which, if true, would show an intentional fouling of plaintiff's horse.

The defendant has given proof tending to show that his mare was in the lead well ahead of Wolverton when he fell, and that his fall was occasioned either by collision with some other horse, or by his stumbling, or some other inherent weakness. The proof on the part of defendant tends to show that immediately after leaving the wire the Belle of Nelson and the horse Clan Alpine rushed to the front; that they became the leading horses in the race and were clear ahead, a length or more, of Nero and Wolverton at the first turn, and at the time when Wolverton fell, so that a collision between Wolverton and the Belle of Nelson, according to the testimony of the plaintiff's witnesses, was impossible; the defendant's proof, as I have said, tending to show that the Belle of Nelson and Clan Alpine took the lead within a few jumps after leaving the wire, and that she could not have collided with Wolverton at the turn, as she had been ahead of him for quite a distance before they reached the turn. The defendant has also given proof tending to show that plaintiff's horse was badly ridden; that his rider was incompetent and did not understand the proper management of his horse, and that the horse was out of condition; that he had stumbled in his exercises before the race, and was in such condition as to be liable to fall upon being pushed to his utmost in the second heat of a contest like this

You will see, therefore, that there is a conflict of testimony here, which you must settle, as to whether this injury was occasioned by the fault of defendant's jockey.

It is for you to say which one of these witnesses you will believe, or where you will place credence; not that you must necessarily conclude that either of these witnesses have sworn falsely, because you must see from the manner in which these witnesses have testified that it was very difficult to judge just exactly, at the critical moment when this horse fell, what horse was next to him, or what horse caused him to fall, or what did actually cause him to fall.

The whole matter seems to have occurred instantaneously, and witnesses of equal intelligence and equal credibility have given you different versions of the way in which this accident occurred, and the manner in which the horse fell, and what horse was nearest to him. Some say the Belle of Nelson was ahead; some say she was clear ahead of him—more than a length; and others say she was running with Wolverton's nose about at her saddle-girth, when her rider pulled her in ahead of him and thereby tripped him up.

These witnesses testify from various positions. You must determine from the intelligence of the witnesses, from their apparent candor and fairness, and from their opportunities of observation, where the truth lies in this case.

The plaintiff has the burden of proof. He is bound to satisfy you by a preponderance of testimony that the accident in this case was occasioned by the fault of the defendant's jockey. If you cannot say, from the testimony in the case when it is all considered together, that it was the fault of this defendant's jockey, then the defendant is not liable. The plaintiff is bound to satisfy you, not only that his horse fell, but that it was caused by this defendant's act or the act of his jockey, and that it was a wilful or intentional act on the part of the jockey, or so grossly negligent as to amount to incompetency on his part. If the proof does not satisfy you that this horse was killed by the act of the defendant's jockey, or by the gross incompetency and negligence of the defendant's jockey; or if you find from the proof that the death of plaintiff's horse was caused by his being out of condition, or his stumbling, or the negligence or incompetency of plaintiff's jockey,—then the defendant will be entitled to a verdict at your hands; but if you find from the proof that the horse was killed, as charged, by the foul riding of the defendant's jockey, then it will be your duty to find a verdict for the plaintiff; and, in case you do, it will also be your duty to fix the damages which the plaintiff has sustained by the loss of his horse; and in doing so the damages must be estimated at what is shown by the proof to have been the value of the horse. The proof tends to show that this was a thoroughbred horse, bred in England and imported into this country only a few weeks prior to this race. The plaintiff alleges that the pedigree of his horse shows a high degree of excellence of blood, but the pedigree is not before you; there is, however, testimony of not only the plaintiff himself, but of experts who saw the horse and who claim, from experience, to be able to judge whether a horse is or is not thoroughbred, that he was a thoroughbred horse.

From the testimony in the case you are to say, if you find the defendant guilty, what was the value of the horse; because the measure of plaintiff's damages is the value of the horse, it being conceded that the loss was total.