## Howard L. Gray, Appellee, v. Val Pflanz, Appellant.
### Term No. 50M8.

Heard in this court at the May term, 1950. Opinion filed October 2, 1950. Released for publication November 2, 1950.

RAEMER & HORN, of Salem, for appellant; RAYMOND O. HORN, of Salem, of counsel.

DOWELL & DOWELL, of Mt. Vernon, for appellee; N. Y. DOWELL, of Mt. Vernon, of counsel.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from the circuit court of Jefferson county by appellant, Val Pflanz (hereinafter called defendant) from a judgment rendered in such court in favor of appellee, Howard L. Gray (hereinafter called plaintiff) assessing damages against the defendant in the sum of $5,000 for personal injuries sustained by the plaintiff.

Plaintiff was a jockey engaged in the occupation of riding horses entered in running races. Plaintiff sustained his injuries while riding a horse belonging to defendant in a race held at Mt. Vernon, Illinois Fairgrounds on July 15, 1948. The evidence discloses that the plaintiff was not acquainted with the particular horse in question nor with the defendant owner, but had been asked by the defendant to ride as a jockey in the particular race. There was some dispute as to whether or not a saddle was provided by the jockey in absence of defendant, or whether defendant was present at the time the horse was saddled. The case was tried upon an amended complaint filed by plaintiff which consisted of but one count, by the terms of which the defendant (together with another defendant who was not involved in the appeal) engaged the plaintiff to ride the race horse. After an allegation to the effect that the plaintiff was in the exercise of due care for his own safety and for the safety of the horse, the amended complaint charges that defendant with full knowledge that the race horse was blind, entered the horse in the race without notice to the plaintiff that the horse was blind, and that the defendant knew at the time of entering the horse that to do so without notice to the plaintiff and to the officials of the Fair Association was a violation of Rules and Regulations relating to running of horses at the Fairgrounds. The complaint then alleges that as a result of the carelessness and negligence and violation of the Rules, and although plaintiff used expert skills of a professional jockey he was unable to prevent the race horse from plunging

through the outside rail of the fence on the race track, which caused injury to the plaintiff consisting of a fracture of his right leg, etc.

The answer of defendant denied the allegations of the complaint, admitted that the plaintiff had ridden the horse, but denied the allegation as to due care on part of the plaintiff and asserted that plaintiff had negligently permitted the horse to run near the rail and that he was negligent in falling off the horse, etc.

On trial of the cause there was evidence to the effect that plaintiff had asked the defendant if there was anything wrong with the horse and defendant said the horse was all right and was fit to run on a muddy track. The plaintiff started the race in front of the judges stand at the extreme outside and the horse apparently continued to stay to the outside of the track. Plaintiff testified that although he tried to turn the horse and struck the horse across the nose in an effort to make it turn, it ran almost in a straight line from the starting position and hit the fence at the first turn.

As the result of the collision with the fence the plaintiff was thrown from the horse to the outside of the track and sustained his injuries. The horse fell on the inside of the track with its head facing in an easterly direction and had a broken right front leg and a large amount of flesh torn off the right hip. After a policeman shot the horse on the track at the point at which it had fallen, the horse got up on three legs and ran on around the track in the approximate center of the track and made the northeast turn of the track and fell at a point near the northwest turn of the race track, where it died.

There was no evidence of the Rules and Regulations of the Fair Association to which reference was made in the complaint. The evidence indicated that the horse had a small growth in the corner of each eye commonly called "hooks" but that apparently this condition did not interfere with the sight of the horse

nor render it blind. There was evidence on behalf of the plaintiff by another jockey who had ridden the horse the previous year, that he switched his jockey whip across the front of the eyes of the horse "to see if it could see" and that it was that jockey's conclusion that the horse was totally blind in the left eye and "moon-eyed" in the right eye. In connection with the testimony of the jockey who testified as to the reaction of the horse to the jockey whip the jockey simply testified that he switched the whip across the eyes to see if the horse could see and from that experiment apparently determined the horse was blind in one eye and "moon-eyed" in the other eye. He explained his statement as to "moon-eyed" by stating that "a moon-eyed horse can see just fairly well when the moon is in a certain state, and when the moon changes it can't see out of that eye."

Plaintiff simply testified that he discovered that the horse couldn't see well, but he didn't know for sure, but that "he couldn't see well; he didn't respond to me." The evidence of the veterinarian was positive to the effect that the horse was not blind and there was testimony to the effect that the horse negotiated two curves around the track after it had been shot, running as fast as it could on three legs, without hitting the fence. There was evidence to the effect that the plaintiff jockey had fallen off a horse in a race just prior to the race in which he was injured and that he was standing up in the saddle and hitting the horse across the nose with his whip just before the horse hit the fence. The track was muddy and slippery and the horse was running at full speed at the time.

On appeal in this court defendant contends that the record is devoid of any proof of negligence on the part of defendant since there is no competent evidence of the blindness of the horse as alleged in the complaint, or any evidence whatsoever of any breach of any Rules and Regulations, and that under the evidence the proxi-

mate cause of the injuries sustained by the plaintiff might reasonably have been attributable to some cause independent of any deficiencies in the eyesight of the horse of which defendant could have had any knowledge prior to the accident; and in view of the slippery condition of the track and the fact that the jockey was a professional jockey and was in exclusive control of the horse and that his action in throwing and shifting his weight in the saddle and striking the horse on the nose might have caused the horse to lose its balance and be thrown into the rail. It is also contended there was a variance between the complaint and the proof; that there was an abuse of discretion in permitting the testimony of the jockey who testified for the plaintiff to the effect that he flicked his bat in front of the horse's face prior to the race to determine the eyesight of the horse; that the verdict of the jury was against the manifest weight of the evidence; and that there were errors in the giving of certain instructions in the case. Motions for directed verdict and for judgment notwithstanding the verdict and for a new trial were made at the close of plaintiff's case and at the close of all the evidence.

We have gone through the evidence in the record and from a consideration of all the evidence are unable to discover any positive evidence of negligence on part of defendant showing a breach of duty by defendant to the plaintiff proximately resulting in an injury to the plaintiff. There was no evidence that defendant knew that the horse was blind and the evidence, in fact, tended to establish that the horse was not blind. There was no evidence of negligence on part of defendant in the record in this cause which could reasonably have been stated to have proximately contributed to the injury. It is true that plaintiff had discussed the condition of the horse with defendant, but there is no evidence from statements made by the defendant as to the horse's condition from which it could be said that the

defendant knew or might reasonably have known that the eyesight of the horse was sufficiently impaired or that the horse was blind to such an extent that an injury of the kind which occurred could reasonably have been foreseen.

 Plaintiff in this case was a professional jockey. He assumed the inherent risks of his profession and for those risks defendant could not be held liable (*St. Louis Nat. Stock Yards v. Morris*, 116 Ill. App. 107; *Hapke v. Huston*, 301 Ill. App. 191).

██ ██ To prevent the operation of the assumption of such inherent risks of his profession it should appear that defendant knew or should have known of the defective eyesight of the horse and that his failure to warn plaintiff of such defective eyesight must have proximately contributed to the injuries sustained. It is in the latter aspect particularly that the action of plaintiff was basically deficient. Where no facts are shown by plaintiff to show that the injuries which were sustained were proximately caused or contributed to by an act or omission to act on part of defendant, a judgment based on such evidence cannot be sustained (*McGrath v. Chicago & A. R. Co.*, 95 Ill. App. 659; *Terminal R. Ass'n v. Larkins*, 112 Ill. App. 366).

 There was evidence to the effect that a blind horse actually responds to a rider much more readily than one which can see. Under the facts in the record there is no showing of the exact or proximate cause of the injury so that it can be fairly stated that any statement or representation which defendant had made to the jockey proximately contributed to the injury sustained by plaintiff. The evidence indicates the horse had been raced previously without any such result. Under the circumstances it was just as reasonable to assume that the injuries sustained by plaintiff resulted from the handling of the horse as to speculate that the deficiency in the eyesight of the horse was the cause of the injury. The only evidence of neglect on part of

defendant which was found in the record consisted of the conversation with the jockey to which we have referred in the course of this opinion. There is nothing to indicate that the defendant could reasonably have foreseen as a consequence of any such statement or conversation under the facts and circumstances in the record that the injury to plaintiff would proximately follow. Proximate cause involves more than a mere possibility, but courts have concluded that the responsibility is imposed under such doctrine for consequences which are probable according to ordinary and usual experience (*Follett v. Illinois Cent. R. Co.*, 288 Ill. 506, 514).

■ In view of the fact that it is our conclusion that there is insufficient evidence to sustain the judgment in favor of plaintiff, the judgment of the circuit court of Jefferson county will be reversed and judgment will be entered here in favor of defendant, Val Pflanz, in this action.

*Reversed, and judgment entered here.*

SCHEINEMAN, P. J., and BARDENS, J., concur.