Henry Hammer, Plaintiff-Appellee, v. Harry A. Slive and Albert Lewis, Copartners d/b/a Rockford Iron & Metal Co., and Charles Higgins, Defendants-Appellants.

Gen. No. 11,394.

Second District, First Division.

October 3, 1960.

Johnson and McCalmont, and John E. Sype, all of Rockford, for appellants.

Miller, Thomas, Hickey, and Collins, of Rockford, for appellee.

SMITH, J.

Plaintiff recovered a money judgment of $50,000.00 on a jury's verdict finding the defendants guilty of negligently causing the carbon monoxide poisoning of plaintiff which resulted in his permanent disability. Post-trial motions were denied and defendants appeal. To reverse this judgment, defendants contend (a) that no actionable negligence was proven, (b) that plaintiff was guilty of contributory negligence, (c) that plaintiff assumed the risk, (d) that the trial court held no conference to settle instructions, and (e) that the giving of plaintiff's instruction No. 8 on the issues was reversible error.

Plaintiff Hammer was a long time employee of a machine tool manufacturing company which over the years had sold non-ferrous scrap to the defendants, Slive and Lewis, a co-partnership engaged in the buying and selling of scrap. The defendant Higgins, an employee of the defendant co-partnership, drove their open-body, cab-over engine Chevrolet truck to the shed

or "yard" of plaintiff's employers and operated the hydraulic end-gate of the truck, powered by the truck motor, for the twenty to twenty-five minutes necessary for loading the scrap. The truck was backed under a shed open on one side, enclosed on three sides and about 200 feet in length along the open side. The back of the cab was about even with the roof of the shed with the cab and engine outside the structure and the remainder of the truck inside. The roof of the shed on the open side was about twenty-five feet from the ground. The plaintiff and the defendant Slive during the operations were stationed at the back of the truck with movable scales and weighed the drums in which the scrap was contained. They were then placed on the end-gate which was lowered to scale platform level and then raised by means of the hydraulic lift to truck bed level. Other employees were in and about the truck and handling the scrap. During the entire operation the truck motor was running at idle or slightly faster speed. Other than the plaintiff, no one engaged in the operation noticed or was affected by the exhaust fumes. When loading was completed the truck drove away and the defendant Slive immediately returned to the plaintiff's desk in the shed where plaintiff was seated, his face flushed and his head on the desk. Plaintiff went to the first aid nurse, said "It must have been carbon monoxide gas," was administered oxygen and, on telephonic advice of the company physician, was removed to the hospital. He was discharged the following day as "assystomatic, except headaches," and dismissed to out-patient care. He remained at home for a week, was returned to the hospital for about four and one-half weeks. Tests revealed a cerebral vascular accident with permanent brain damage. The medical testimony was in substantial agreement as to the plaintiff's present condition and in equally substantial disagreement as to whether that condition

was the result of natural causes or directly related to carbon monoxide poisoning.

The rules under which a trial court may direct a verdict or we may disturb a verdict on appeal, are too well known to require unnecessary repetition here. The lethal effect of excessive carbon monoxide gas is a matter of common knowledge. In the operation of the motor vehicle the defendants were under a duty to so operate it that it would not create a carbon monoxide hazard to others, with that duty circumscribed by the reasonable man rule. "The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as possible, nor waste his anxiety on events that are barely possible." Pollock on Torts, 8th ed. 41. We, therefore, feel, under the occurrence events and circumstances here stated, that the conduct of the plaintiff as it relates to contributory negligence, the conduct of the defendants as it relates to negligence, and the proximate cause of the plaintiff's present condition, were questions of fact properly submitted to the jury by the trial court. We are precluded from disturbing the verdict of the jury on these questions unless conclusions opposite to those reached by the jury are clearly evident. Rude v. Siebert, 22 Ill.App.2d 477, 483, 161 N.E.2d 39.

The trial court, on motion, struck the affirmative defense that the plaintiff had assumed the risk of carbon monoxide poisoning. Contrary to the defendants' assertion, this cause of action did not originate in Section 5 of the Workmen's Compensation Act nor is it a master-servant relationship. The plaintiff was not in any sense of the word a servant or employee of the defendants or any of them nor under any contractual relationship with them. His only duty for his own employer was to weigh and record the weights of the scrap. While so engaged, he was in-

jured by third party tort feasors without privity of contract with them. Even assuming, without holding, that as to his own employer plaintiff assumed the danger of carbon monoxide poisoning in weighing the scrap, "the rule that an employee engaged in a dangerous employment assumes the risk of injury which exists while the business is carried on in the usual and ordinary way does not apply when recovery is sought from a third person, whose negligence caused the injury, although exposure to such injury is one of the risks of the employment." 17 Illinois Law and Practice, page 515, Sec. 151. The doctrine of the assumption of risks was conceived in the law of contract whereas the parentage of contributory negligence is in the law of torts. Defendants rely heavily on the case of Wills v. Paul, 24 Ill.App.2d 417, 164 N.E.2d 631, in support of their position. That case is readily distinguishable in that there the employee sued his own employer, not third party tort feasors, in a negligence action for an injury sustained out of his performance of his employment contract. There assumption of risk was properly pleaded and proved. In a simple negligence action against third party tort feasors the doctrine of assumption of risk is a stranger wandering aimlessly and without purpose or effect in a strange field. The plea of assumption of risk was properly stricken.

The defendants further complain that no conference to settle instructions was held by the trial court. The record is wholly silent on this point until the question was raised on post-trial motion. During the arguments thereon, the following colloquy took place between court and counsel:

Mr. Sype: May I make a statement for the record regarding instructions?

The Court: You may.

202

Mr. Sype: Perhaps to refresh the recollection of the court, it is my recollection that the close of the case, before closing arguments, I inquired of the court if there would be a conference on instructions, and the court informed me that he has decided the instructions to give, but I was free to examine them. So, I took the instructions from the court and read them during Mr. Johnson's argument. At the conclusion of the case I returned them to the Court. And when the instructions were handed to me they were already endorsed as given. Is that a correct statement?

The Court: I think that is a correct statement of the facts, but you made no suggestion that any of them were wrong.

Mr. Johnson: May I also, for the records, your Honor, say that, as Mr. Sype has stated, the instructions were handed to Mr. Sype at the beginning of my argument for the defense, and that at no time prior to or during argument did I have an opportunity to examine the instructions, and that I did not see them until after I had concluded my argument.

The Court: And you didn't ask me for any additional time to examine them. I think that makes the record straight.

 We have previously held that, "The court is required by the statute to hold a conference with counsel to settle the instructions and to inform them of his proposed action thereon prior to the arguments to the jury." Onderisin v. Elgin, J. & E. Ry. Co., 20

Ill.App.2d 73, 155 N.E.2d 338. We reiterated this view in Cross v. Blood, 22 Ill.App.2d 496, 161 N.E.2d 349, but said that, when the record is wholly silent on the matter, we will presume that the statutory conference was held. Here it affirmatively appears that no conference was held. While it would be a strain on credulity to believe that the conference on instructions will, in every case, result in errorless instructions, it is, nevertheless, a legislative vehicle designed to more closely approximate that utopian goal. It was not lightly·adopted nor should it be lightly treated by court or counsel. We do not want to be understood as indicating that, standing alone, the failure to hold the conference will be sufficient for reversal. We do believe, however, that it is our duty to enforce rather than emasculate the statute, and, where it may be said that such failure contributed in whole or in part to deprive a party of a fair trial under the law, then reversal and remandment seems the natural consequence.

 Plaintiff's instruction No. 8 defining the issues in this case contains 1,067 words. Even a casual reading of this instruction poses the query as to why it was ever tendered, why it was ever given and how it escaped violent protest until post-trial motion. The character and qualities of an instruction defining the issues were clearly stated in Signa v. Alluri, 351 Ill. App. 11, 113 N.E.2d 475, and approved in Woolsey v. Rupel, 13 Ill.App.2d 48, 140 N.E.2d 855. Envisioned within such an instruction is a brief, concise and succinct statement of the ultimate issues to be decided by the jury in arriving at their verdict, unembellished by the prolixity of complaint and answer and shorn of evidentiary allegations and partisan adjectives and conclusions. To quote the entire instruction would unduly extend this opinion. The issue of injury and damage was covered in this fashion:

"It is further alleged that the plaintiff Henry Hammer while working in said yard shed during the time the motor truck was emitting carbon monoxide gases, became ill, was taken to Rockford Memorial Hospital where he was thereafter hospitalized, and sustained permanent brain and nerve damage caused by the inhalation of carbon monoxide gases; that this damage is permanent in nature and, as a result thereof, Henry Hammer has become permanently and totally disabled and unable to engage in any type of gainful activity since February 13, 1957, and will be permanently unable to engage in gainful activity of any nature; and that he incurred expenses for medical and hospital care and has been caused pain and suffering, all as a result of said injuries."

The remainder of the instruction was of like tenor in its coverage of both complaint and answer. It seems patent that it was not a concise statement of ultimate issues but an extended dissertation on the claims, denials and allegations of both parties which Signa v. Alluri, 351 Ill. App. 11, 113 N.E.2d 475, condemned, when conveyed to the jury through the medium of the trial judge. It has long been the rule that the pleadings in civil cases do not go to the jury for reasons that are readily apparent. To have them set out, detail by detail, through the lips of the trial judge under the guise of defining the issues is pointedly prejudicial. Particularly is this true where the question of proximate cause was a major issue and the evidence thereof most conflicting. Where evidence on a given point is quite conflicting, the necessity for correct instructions to guide the jury in evaluating the evidence takes on additional importance.

■■■ While we cannot, with precision, define the effect of such an instruction in the instant case nor can we say with categorical certainty that a confer-

ence on instructions would have obviated the error, it would have riveted the attention of court and counsel to the instruction and its manifest imperfections. Such is the purpose of the conference. Such is the purpose of the statute. The defendants, having called the attention of the trial court to the conference cannot be said to have waived their right to now protest. It is not for us to conjecture or to guess the effect of this instruction but rather to enforce the legislatively prescribed procedures for a fair trial. Absent those procedures in the instant case, we cannot say a fair trial was had. Accordingly this cause must be and is reversed and remanded for new trial.

Reversed and remanded.

McNEAL, P. J. and DOVE, J., concur.