Robert Hensley, Plaintiff-Appellee, v. Lester F. Hensley, Defendant-Appellant.

Gen. No. 64–91.

Fifth District.

September 14, 1965.

Wolff & Jones, of Murphysboro, for appellant.

Mitchell & Green, of Murphysboro, for appellee.

MORAN, J.

Defendant appeals from a judgment entered on a jury verdict of $20,000 in favor of the plaintiff in a suit for personal injuries. No contention is made that the verdict is excessive.

Plaintiff, Robert Hensley, age 39, is the son of the defendant, Lester Hensley, and both reside at Murphysboro, Illinois. The defendant was in the business of buying and selling apples on the date of the accident in question which occurred on September 6, 1962 at Hillsboro, Illinois.

The complaint alleged that on September 5, 1962, the defendant loaded his truck with crates of apples

in such a manner that the stacked crates were resting on apples rather than the solid wooden edge of the crates and that as a result thereof, the crates of apples were unstable and easily tipped or tilted; that about eight o'clock a. m. on September 6, 1962 and after the truck had been loaded, the defendant went to the home of the plaintiff and asked him to accompany the defendant on a trip to central Illinois for the purpose of assisting defendant in the unloading of the apples which were to be sold to various storekeepers; that said assistance was to be rendered by plaintiff to defendant without consideration or remuneration; that in making a particular sale, defendant asked plaintiff to climb upon the load of apples and to hand several crates of apples down to the defendant who was standing on the street; that at no time did the defendant advise the plaintiff that the crates of apples were loaded in an unstable manner, although the defendant knew or in the exercise of reasonable care should have known that the crates were unstable and easily tipped; that plaintiff could not observe the way the crates were loaded on said truck due to the solid wooden sides on the bed of said truck; that as the plaintiff started to hand down a crate of apples to the defendant, the wooden crate on which he was standing tipped and overturned due to the unstable and dangerous manner in which it was loaded and plaintiff was thrown from the top of the load of apples onto the pavement thereby suffering severe and permanent injuries; that at all times the plaintiff was in the exercise of due care and caution for his own safety.

The defendant denied the allegations of the plaintiff's complaint and also set up the affirmative defense of the assumption of the risk, not contending, however, that a master and servant relationship existed. A motion was made to strike this defense which was denied by the trial court. However, the trial court

sustained plaintiff's objection to an assumption of the risk instruction at the trial.

On September 5, 1962, the defendant, Lester Hensley, went to an orchard in Murphysboro, Illinois to pick up a truckload of apples. His truck was loaded with crates of apples, using two types of crates. One type is called a "field crate" and the other type is a cardboard box in which top grade apples were placed. The field crate is a wooden box approximately eighteen inches long, twelve inches wide and twelve inches deep. The filled field crates were stacked on that part of the truck bed nearest the cab. The cardboard box type of crates were placed to the rear of the truck bed. At the time the apples were being loaded, Ted Lipe, an employee of the defendant, noticed that the field crates were filled to overflowing, past the top of the crate, making it impossible for the field crates to be stacked solidly, one atop the other. He called this to Lester Hensley's attention and employees of the orchard then removed some of the apples from some of the crates. Not all of the field crates were evened off; some were left packed and stacked as they had been, causing an uneven load. When the truck was completely loaded, the top layer of the crates extended about four inches over the top of the side panels of the truck.

Lester Hensley drove his truck home and the following morning at about 7:00 or 7:30, he and Ted Lipe proceeded with the truckload of apples to the home of the plaintiff, Robert Hensley. Lester Hensley asked Robert to accompany him and Ted Lipe on a trip to sell the crates of apples. Lester told Robert that because of his asthma, he (Lester) could not climb up on the truck and he thought that Ted Lipe, due to his size, was unable to climb atop the large load of apples. He asked Robert to accompany them so that Robert could climb atop the load of apples and assist in unloading them. Robert had been with his father once

or twice before on selling trips but had never unloaded apples from the truck. He would either stay in the cab of the truck or take a walk. Robert Hensley had not seen the truck being loaded the night before. The first time he saw the load of apples was the morning Lester Hensley and Ted Lipe came to his house to ask him to accompany them on the trip. He agreed to go along and help unload the apples.

They proceeded north from Murphysboro, made two or three stops and sold some of the apples that were crated in the cardboard crates located at the rear of the truck bed. Robert Hensley did not help unload these cardboard crates. They then proceeded to Hillsboro, Illinois where Lester Hensley parked the truck at an angle in front of the Kroger Store in Hillsboro. The manager of the store agreed to purchase six or eight crates of apples of the type packed in the field crates. Lester Hensley asked Robert to climb atop the truck and hand him the crates of apples because "Ted was kind of heavy and it was too much to ask him to get up there to get them." Robert Hensley climbed atop the load of apples and proceeded to hand down the crates from the top row of apples packed in field crates to his father and Ted Lipe who were standing on the street beside the truck. After some difficulty getting the first crate of apples loose, Robert handed the crate over the side. He reached down and picked up a second crate and handed it over the side. He then reached down and picked up the third crate of apples. When he pivoted to hand the third crate of apples over the side, he placed all of his weight on his right leg and the field crate on which he was standing astride, with a foot on each end, tilted causing him to lose his balance and fall over the side of the truck to the concrete street below.

Appellant contends: (1) That the plaintiff was precluded from recovery because he voluntarily encoun-

256

tered a known risk which resulted in his injuries; (2) that it was error for the court to refuse to instruct on the defense of the assumption of the risk since it was made an issue by the pleadings; and (3) that there was no evidence of any negligence of the defendant and therefore it was the duty of the trial court to direct the verdict in his favor.

█ The defense of assumption of the risk is based upon the principle that one who voluntarily assumes the risk of injury from a known danger is debarred from a recovery. The doctrine emerged or at least was distinctly developed with the common law action of a servant against his master. It was first enunciated in Illinois in the case of Camp Point Mfg. Co. v. Ballou, 71 Ill 417, wherein the court said at 419 and 420:

> "The doctrine upon this subject appears to be, that an employee can not recover for an injury suffered in the course of the business about which he is employed from defective machinery used therein, after he had knowledge of the defect, and continued his work, it being held, that, upon becoming aware of the defective condition of such machinery, he should desist from his employment; but if he does not do so, and chooses to continue on, he is deemed to have assumed the risk of such defects, at least when he had not been induced by his employer to believe that a change would be made, and had not plainly objected."

█ The defense of assumption of the risk has always been confined to master and servant cases by the Supreme Court of our state. In the early case of The Pennsylvania Co. v. Backes, 133 Ill 255, 24 NE 563 (1890), the court said at page 262:

257

"... But in this case the relation of master and servant did not exist between the plaintiff and the railroad company. The former was a stranger to the latter. He was not employed by the company, and had nothing to do with it or its employes. Appellee was a laborer in the employ of the Star and Crescent Flour Mills Company. His business was to assist in moving cars on the scale platform and shovel wheat from them into the shed of the mill company, and we are inclined to hold that the exemption of the master, growing out of the relation of master and servant, and the servant's contract to assume ordinary risks incident to the business, does not apply."

To the same effect are the cases of Chicago & E. I. R. Co. v. Randolph, 199 Ill 126, 65 NE 142, Shoninger Co. v. Mann, 219 Ill 242, 76 NE 354, Conrad v. Springfield Consol. R. Co., 240 Ill 12, 88 NE 180, and O'Rourke v. Sproul, 241 Ill 576, 89 NE 663. In Conrad our Supreme Court flatly stated at page 17:

"Appellant's contention that appellee must be held, as a matter of law, to have assumed the risk cannot be sustained, since the doctrine of the assumption of risk is only applicable to cases arising between master and servant. Shoninger Co. v. Mann, 219 Ill 242."

The most recent case on this subject is Davis v. Springfield Lodge No. 158, 24 Ill App2d 102, 164 NE2d 243, wherein the court said at 110:

"It is further contended by defendant that since plaintiff had been a member of defendant lodge for 16 or 17 years, he must be held to have assumed whatever risks were involved in entering the unlighted therapy room. The doctrine of as-

258

sumption of risk is applicable only in cases arising between master and servant."

Appellant criticizes the decisions of our Supreme Court which confine assumption of the risk to master and servant cases. He cites one case as being unfortunate; another case as being based upon vague reasoning and states that other cases are based upon rationale which was not founded upon authority. He contends that the doctrine of assumption of risk was adopted in "totality" from the law of England and the restriction of its application came later. An examination of the authorities cited, do not support his contention, since both cases involve master and servant situations. Camp Point Mfg. Co. v. Ballou, 71 Ill 417; Pennsylvania Co. v. Lynch, 90 Ill 333.

■■ In support of his position that the doctrine has been applied in cases not involving the master servant relationship, he cites Brownback v. Thomas, 101 Ill App 81, and Campion v. Chicago Landscape Co., 295 Ill App 225, 14 NE2d 879. Assuming that these cases support defendant's position, neither opinion cites authority sufficiently persuasive to cause this court to disregard the clear pronouncement of our Supreme Court. However, even if we did agree with him, we do not believe that it is the function of an appellate court to overrule or attempt to overrule or criticize the decisions of the highest judicial tribunal of our state or nation. We hold that the defense of the assumption of the risk is not available to the defendant in this case and therefore the trial court's refusal to instruct on this defense was not error.

The defendant also contends that he was not guilty of any negligence as a matter of law and that therefore it was error for the trial court to refuse to direct a verdict for him on that issue. Plaintiff charged in

his complaint that the defendant negligently loaded the crates of apples so that they were unstable, easily tipped or overturned and that he negligently and carelessly failed to warn plaintiff of this condition. The plaintiff testified: "I had my foot on the box and it tipped on me as I handed it over. It threw me off balance and caused me to fall over the side of the truck and up to this point, I had no knowledge of how these boxes were packed." The fact that the apples were unevenly loaded in the crates or boxes and that the defendant did not warn the plaintiff of this condition is verified by defendant's own testimony. Defendant testified that the plaintiff was not present when the apples were loaded; that they were packed in such a way so that they were not too solid and that he did not tell the plaintiff anything about the load of apples or how they were loaded. Ted Lipe, who worked for the defendant testified that the crates were uneven and that he never told the plaintiff how the crates were loaded.

In Kahn v. James Burton Co., 5 Ill2d 614, 622, 126 NE2d 836, 840 (1955), the court said:

"All men are presumed to know those things which are matters of common knowledge and must be held, in the absence of actual knowledge or notice, to have reasonably anticipated such occurrences as in the ordinary nature of things reasonable men should know will probably occur. Every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong."

We feel, as did the jury, that in the common experience of a reasonable person, the defendant should have anticipated that when the plaintiff climbed upon the load of apples that the load might shift and cause him to fall and be injured.

In Lindroth v. Walgreen Co., 407 Ill 121 at 130, 94 NE2d 847, our Supreme Court said:

> "A motion for directed verdict or for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of his case."

Hall v. Chicago & N. W. Ry. Co., 5 Ill2d 135, 125 NE2d 77; Zank v. Chicago R. I. & P. R. Co., 17 Ill2d 473, 161 NE2d 848.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

EBERSPACHER, P. J. and GOLDENHERSH, J., concur.