Dorothy JOLLEY, Plaintiff,

v.

CHICAGO THOROUGHBRED ENTERPRISES, INC., a corporation, Balmoral Jockey Club, Inc., a corporation, Hugh Grant, James Thompson, and James Ollie Kinnard, Defendants.

No. 66 C 929.

United States District Court
N. D. Illinois, E. D.
Nov. 6, 1967.

John Cashion and Philip H. Corboy, Chicago, Ill., for plaintiff.

Arent Jacobsen, Francis J. Reilly, Chicago, Ill., for defendants, Chicago Thoroughbred Enterprises, Inc., Balmoral Jockey Club, Inc., James Thompson and James Ollie Kinnard.

Cornelius J. Harrington, Jr., of Kirkland, Ellis Hodson, Chaffetz & Masters, Chicago, Ill., for defendant, Hugh Grant.

## MEMORANDUM AND ORDER

CAMPBELL, Chief Judge.

On plaintiff's motion to strike the affirmative defense of assumption of risk.

This is a somewhat unusual property damage action brought by the owner of a deceased thoroughbred race horse, "Adsum". "Adsum" died on May 20, 1965 as a result of injuries sustained that day in a collision with another thoroughbred race horse, "Jim Dooley". The collision occurred on the main course of the Arlington Park race track during the morning exercise period. Some 10–13 seconds before the collision, "Jim Dooley" along with another horse, "Bailed Out" was released from a starting gate one-eighth of a mile from the point of collision. (The starting gate was set up near a marker known as the "⅞ pole" and the collision occurred near a marker known as the "¾ pole".) The starting gate was operated by agents or employees of the defendant Balmoral Jockey Club, Inc. who had leased the track from the owner defendant Chicago Thoroughbred Enterprises, Inc. Defendants Thoroughbred Enterprises and the individual employees were dismissed by plaintiff before the case went to the jury.

Plaintiff in her complaint has charged defendant Balmoral with specific acts of negligence relating to the operation, management and control of the main course of the track and the starting gate. The complaint also charges the defendant Hugh Grant, owner of the horse "Jim Dooley", with negligence in his failure to properly control, supervise and manage the operation and riding of "Jim Dooley". Both defendants deny the allegations of negligence and allege that plaintiff was guilty of contributory negligence.

Defendant, Balmoral, has also pleaded, as an affirmative defense, assumption of risk, and has offered an instruction based on that defense. (Illinois Pattern Jury Instructions 13.01) Plaintiff has moved to strike the affirmative defense and will, I presume, object to the tendered instruction.

The doctrine of assumption of risk or *volenti non fit injuria* has been a source of confusion and controversy for some time. (Prosser, Law of Torts, 3rd Ed. p. 450; Harper and James, Law of Torts, Vol. 2, p. 1162 et seq.; Wade, The Place of Assumption of Risk in the Law of Negligence, 22 La.L.Rev. 5)

Before the enactment of workmen's compensation statutes it was pleaded by the employer in every workmen's case, generally with the result of denying recovery. As a social concept, it was quite

comfortable with the laissez faire philosophy, well expressed by the Supreme Court of the United States when it laid the doctrine to rest insofar as it prevented recovery in Federal Employers Liability Act cases.

"Assumption of risk is a judicially created rule which was developed in response to the general impulse of common law courts at the beginning of this period to insulate the employer as much as possible from bearing the 'human overhead' which is an inevitable part of the cost—to someone—of the doing of industrialized business. The general purpose behind this development in the common law seems to have been to give maximum freedom to expanding industry. The assumption of risk doctrine for example was attributed by this Court to 'a rule of policy, inasmuch as an opposite doctrine would not only subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business', but would also encourage carelessness on the part of the employee". (Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54 at 58, 59, 63 S.Ct. 444 at 447, 87 L.Ed. 610)

The court having indicated that the philosophy was no longer morally acceptable, concluded that with respect to F.E.L.A. cases, "every vestige of the doctrine of assumption of risk has been obliterated from the law". (318 U.S. at 58, 63 S.Ct. at 446)

The adoption of workmen's compensation statutes throughout the states has, for all practical purposes, eliminated the doctrines application in workmen's cases. Outside the workmen's compensation field, i. e. in any situation where an action may be brought for negligence, the defense is still available in some form or other in a majority of jurisdictions.

■■ I have searched the decisions of the Supreme Court of Illinois, however, (this being a diversity case in which the law of Illinois is to be applied) and find clear pronouncements that in this state the defense is available only in cases involving the contractual relationship of master and servant. (Shoninger Co. v. Mann, 219 Ill. 242, 76 N.E. 354 (1906); Conrad v. Springfield Consol. Ry. Co., 240 Ill. 12, 88 N.E. 180 (1909); O'Rourke v. Sproul, 241 Ill. 576, 89 N.E. 663 (1909)). This results, of course, in a very limited application since most master-servant cases come under the Workmen's Compensation Act.[1]

Despite these clear pronouncements by the Supreme Court, reference to the doctrine is sometimes found in Illinois Appellate Court decisions. For example, in Campion v. Chicago Landscape Company (First Dist., 1938), 295 Ill.App. 225, 14 N.E.2d 879, the court clearly rejected (though in complete *obiter dicta*) the higher courts limitation of assumption of risk.

"We are aware of the fact that there are cases in this state holding that the doctrine of assumption of risk is confined to situations where a contractual relationship exists, and in some instances it has been restricted to the relationship of master and servant, but current authority is otherwise. (295 Ill.App. at 239, 14 N.E.2d at 885)

*Campion* cites only one case, Murphy v. White City Amusement Co., 242 Ill.App. 56, wherein plaintiff was injured while riding on amusement device at an amusement park. *Murphy*, in turn, never clearly addresses itself to the doctrine of assumption of risk or its application or limitation—in Illinois.

If further analysis of the *Campion* decision be required, I refer to the later appellate court decision of Hensley v.

---

1. To the discredit of the development of the common law, it appears the defense is still available in the limited master-servant cases which are not covered by the Workmen's Compensation Act. (See, for example, Mack v. Davis (Second Dist., 1966) 76 Ill.App.2d 88, 221 N.E.2d 121; Kelly v. Fletcher-Merna Co-operative Grain Co. (Third Dist., 1961) 29 Ill.App.2d 419, 173 N.E.2d 855.)

Hensley, 62 Ill.App.2d 252, 210 N.E.2d 568 (Fifth Dist. 1965):

"In support of his position that the doctrine has been applied in cases not involving the master servant relationship, he cites Brownback v. Thomas, 101 Ill.App. 81,[2] and Campion v. Chicago Landscape Co., 295 Ill.App. 225, 14 N.E.2d 879. Assuming that these cases support defendant's position, neither opinion cites authority sufficiently persuasive to cause this court to disregard the clear pronouncement of our Supreme Court. However, even if we did agree with him, we do not believe that it is the function of an appellate court to overrule or attempt to overrule or criticize the decisions of the highest judicial tribunal of our state or nation. We hold that the defense of the assumption of the risk is not available to the defendant in this case and therefore the trial court's refusal to instruct on this defense was not error."

I too am unwilling to overrule or attempt to overrule or criticize the decisions of the highest judicial tribunal of our state or nation. I note also that the dicta in *Campion* has been rejected by later cases in every appellate district in the state. To illustrate, I cite some rather recent decisions from the appellate courts:

## FIRST DISTRICT

Maytnier v. Rush (1967) 80 Ill.App. 2d 336, 225 N.E.2d 83.

After citing earlier cases which indicate the doctrine is strictly limited to master-servant relationships, the court stated:

"These cases evidence the traditional limitation placed on the application of the doctrine of assumption of risk in Illinois which its judiciary continues to adopt." (80 Ill.App.2d at 349, 225 N.E.2d at 90)

## SECOND DISTRICT

Hammer v. Slive (1960) 27 Ill.App. 2d 196, 169 N.E.2d 400.

After first pointing out that the doctrine was limited to master-servant relationships and that this was not a master-servant case, the court stated:

"In a simple negligence action against third party tort feasors the doctrine of assumption of risk is a stranger wandering aimlessly and without purpose or effect in a strange field. The plea of assumption of risk was properly stricken." (27 Ill.App.2d at 202, 169 N.E.2d at 403)

## THIRD DISTRICT

Davis v. Springfield Lodge No. 158, etc. (1960) 24 Ill.App.2d 102, at 110, 164 N.E.2d 243, at 247:

"The doctrine of assumption of risk is applicable only in cases arising between master and servant."

## FOURTH DISTRICT

Fosen v. O'Dell Grain and Coal Company (1966) 70 Ill.App.2d 384, 217 N.E.2d 126.

"Assumption of risk was urged by the defendant as an affirmative defense to the action. This affirmative defense was stricken on motion of the plaintiff. This action by the trial court was not error."

In Hall v. Gerdes, [68] Ill.App[2d 119], 215 N.E.2d 8 (1966) it was held that the doctrine of assumption of risk is applicable only to cases arising between master and servant and we there referred to the case of Hensley v. Hensley, 62 Ill.App.2d 252, 210 N.E. 2d 568 (1965). Hensley has an extended discussion of the application of assumption of risk. It is clear here that there was not in existence a master and servant relationship. (70 Ill. App.2d at 386–387, 217 N.E.2d at 127)

2. Brownback v. Thomas, 101 Ill.App. 81, was decided in 1901 and the total opinion consists of one page. It contains no discussion of the questions presented here.

## FIFTH DISTRICT

Hensley v. Hensley (1965) 62 Ill.App.2d 252, 210 N.E.2d 568 (Quoted at length above)

The only Illinois Supreme Court decision cited by defendant in its brief is Moore v. Edmonds, 384 Ill. 535, 52 N.E. 2d 216 (1943). In that case the plaintiff was injured on defendant's toboggan slide and the defendant relied on a "release" or exculpatory agreement signed by plaintiff and a large sign warning patrons that they rode at their own risk. The court used the term "assumption of risk" in relation to these alleged exculpatory agreements. In affirming the judgment for plaintiff the court stated, "The question of whether the alleged release was obtained knowingly and fairly is a fact question to be decided by the jury." We are not here concerned with the validity of exculpatory agreements. In considering the question before me I am more impressed by the fact that the *Moore* court found that the proprietors of that sporting event were negligent and that the plaintiff-participant could recover. Defendant Balmoral here argues that a participant in a sporting event cannot recover as against a negligent operator-proprietor of the activity. If that argument was made in *Moore* it was obviously rejected.

I find the other cases cited by defendant equally unpersuasive. Gray v. Pflanz (1950) 341 Ill.App. 527, 94 N.E.2d 693, is a master-servant case. (The servant-jockey was injured in a horse race and sued his master, the owner of the horse. The Court there speaks of the risks of his profession—and states further that there is no evidence of negligence on the part of the owner.) Neither *Gray* or McKay v. Irvine (N.D.Ill. 1882) 10 F. 725, (also cited by defendant) considered the question here at issue.

However, assuming arguendo that the defense of assumption of risk should be available in Illinois, I am equally convinced that this would not be a proper case for its application. Prosser states (at Prosser on Torts, 3rd Ed., pp. 461–462):

"The defense of assumption of risk is in fact quite narrowly confined and restricted by two requirements: first, that the plaintiff must know and understand the risk he is incurring, and second, that his choice to incur it must be free and voluntary. Since in the ordinary case there is no conclusive evidence against the plaintiff on these issues, they normally go to the jury."

"Knowledge of the risk is the watchword of assumption of risk. Under ordinary circumstances the plaintiff will not be taken to assume any risk of either activities or conditions of which he is ignorant. Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself."

and at 464:

"Even where there is knowledge and appreciation of a risk, the plaintiff may not be barred from recovery where the situation changes to introduce a new element, such as several balls in the air at one time in a baseball park. The fact that the plaintiff is fully aware of one risk, \* \* \* does not mean that he assumes another of which he is unaware \* \* \*. And his knowledge of the negligence of one person does not mean that he assumes the risk of that of another \* \* \*."

If plaintiff here can be held to have had knowledge and appreciation of any risk, it was the ordinary risks generally associated with the sport of horse racing, i. e. injury sustained in racing competition. These were the facts in McKay v. Irvine (N.D.Ill.1882) 10 F. 725 and Gray v. Pflanz (1950) 341 Ill.App. 527, 94 N.E. 2d 693 cited by defendant. (Though *Gray*, discussed supra, was a master-servant case as well.) This case is better compared to Herendeen v. Hamilton (1943) 317 Ill.App. 644, 47 N.E.2d 335, wherein plaintiff's horse was injured when it was caught on an eight inch bolt projecting from the starting gate. The

complaint alleged that the official starter, an employee of the track, was negligent in lining up the horse at the starting gate. In affirming a judgment for plaintiff, the appellate court discussed defendant's argument based on assumption of risk:

> "It is further urged that plaintiff assumed the risk involved. That doctrine is not applicable to the facts presented. The doctrine of assumed risk is generally limited to cases where one voluntarily encounters a known danger or exposes himself to conditions susceptible of possible injury. In the case at bar the plaintiff did not have control of the property nor of the danger to which his horse was exposed. Both of these instrumentalities were entirely under the control of defendant and it was his negligence, as 'the jury found, which resulted in the injuries sustained." (317 Ill.App. 648, 47 N.E.2d 336)

The baseball cases, so often used to demonstrate the doctrine, further illustrate my point. While a stadium owner may not be liable for injuries sustained from the ordinary and expected danger—a ball batted into the stands in the course of the game—it may be liable for injuries caused by the out of the ordinary. Klinsky v. Hanson Van Winkle Munning Co., 38 N.J.Super. 439, 119 A.2d 166. (Plaintiff struck by bat which slipped out of batters hands) ; Cincinnati Baseball Club Co. v. Eno, 112 Ohio St. 175, 147 N.E. 86 (Spectator hit by ball during practice session when several balls were proval:

In Maytnier v. Rush, supra, the court cited and quoted the Eno case with approval:

> "We do not think that a court should say as a matter of law that a spectator assumes the risk of every batting or

throwing of the ball permitted upon the field by the management, no matter how near the grand stand, no matter how many groups were engaged in the practice, and no matter whether the batting or throwing is a part of the game itself."

In the *Maytnier* case the court concluded by again stating that the doctrine's underlying premise is appreciation of the danger itself. In the case before me, the record is replete with evidence that the plaintiff could not be expected to appreciate or foresee the danger which it alleges caused the injury, i. e. the negligence of Balmoral's agents in their management and operation of the main course and the starting gate.

From my reading of the many baseball cases I offer the further observation that in most of those cases, despite their discussions of the risks assumed, there is no liability, not because of plaintiff's awareness of the danger but simply because there is no negligence on the part of the stadium proprietor for he has exercised reasonable care to assure the safety and comfort of his patrons. In short, recovery would be denied in most of those cases without resort to assumption of risk.[3]

With this observation in mind, I point out that the complaint filed herein charges the defendant with specific acts of negligence. If participants in games or sports assume any risk of injury, it is at the hands of their fellow participants and only so long as the game is played in good faith and *without negligence.* (Harper & James, The Law of Torts, Vol. 2, p. 1181)

For the reasons hereinabove set forth, the motion to strike the affirmative defense of assumption of risk is granted and the offered instruction on that issue is refused.

3. See Note, The liability of the proprietor of a baseball park for injuries to spectators struck by batted or thrown balls. 1951 Wash.U.L.Q. 434.