(No. 92-CC-1059–

VADA BERNIECE TULEY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 6, 1995.*

MIKE McELVAIN, for Claimant.

JIM RYAN, Attorney General (LAWRENCE RIPPE, Assistant Attorney General, of counsel), for Respondent.

## OPINION

MITCHELL, J.

On September 24, 1990, the Claimant, Vada Berniece Tuley, was injured when she fell on a "still wet," slippery floor in a hallway at the Pontiac prison in Pontiac, Illinois.

The Claimant worked within the confines of the Pontiac correctional facility. However, she was not a State employee. She was an independent contractor.

The Claimant's office and that of her supervisor were located next to each other in the basement of what was known as the Clinical Services Building. This area was shared with a part of the prison administration known as the B of I. The Claimant and her supervisor's offices shared a common wall with no door. To reach the supervisor's office, she had to leave her office and walk briefly in the hallway to her supervisor's door. The hallway was maintained and cleaned under the supervision of Thomas Heenan, an employee of the State of Illinois. Normally, Mr. Heenan would have an inmate clean, mop or wax the floor. On September 24, 1990, inmate Earl Johnson mopped the floor. To do this, Mr. Heenan had to unlock a gate to allow him into the hallway, unlock a closet so that he could have the equipment to do the work, and then replace the equipment and unlock the gate so he could return to other duties.

There is no clear indication in the record as to when the mopping occurred, although the water had not evaporated off of the floor when Vada Berniece Tuley exited her supervisor's office and fell. No warnings of any form were used by Mr. Heenan to tell the people working along this hallway that the floor was wet.

While in her supervisor's office, Vada Berniece Tuley had her back to the hallway, did not hear the inmate mopping the floor, and did not observe anything unusual as she exited Betty Towal's office door. She took one or two steps into the hallway and would have seen any warnings, if any had been present, telling of the wet floor. Not knowing that the floor was wet, Vada Berniece Tuley fell, sustaining significant injury.

The Claimant was elderly, was not wearing high heels or in any other way acting in a negligent manner, and from the record appeared to be exercising due care and caution under the circumstances.

There was no warning to the Claimant that the floor was wet. The State owed the Claimant a duty to inform her of such for her own personal safety. She was an invitee on the State's premises. The duty to warn arises when unequal knowledge of danger exists between the landowner and the person on the land. This is especially true when the landlord knows harm might occur if no warning is given. (*McColgan v. Environmental Control Systems* (1991), 212 Ill. App. 3d 696, 571 N.E.2d 815, 156 Ill. Dec. 835.) Here, the unequal knowledge exists. Tom Heenan is in charge of the inmate mopping the floor and is fully aware of when the mopping began and when it ended. It is obvious that a wet floor is slick and that a person certainly can fall when walking on a wet concrete floor. Under the circumstances, the knowledge of the landlord, or the State of Illinois, far exceeds the knowledge that the Claimant had of the danger the concrete floor presents shortly after being mopped. Clearly, there is a duty to warn, and by failing to warn, the State is negligent.

The State of Illinois, as a landowner, owes the same duty that other landowners owe to people lawfully upon their premises. There is an obligation to see that the property is reasonably safe. (IPI Civil 120.02.01.) Further, the manner in which they conduct any activity must also be done with ordinary care. (IPI 3d Civil 120.03.01.) When a landlord mops a floor, it has the obligation of ordinary care for the safety of anyone that is rightfully present. *Minters v. Mid-City Management Corp.* (1947), 331 Ill. App. 64, 72 N.E.2d 729.

The evidence deposition of Dr. Alain Menguy is brief and provides, in detail, the medical significance of the injury suffered by Vada Berniece Tuley. The injury is called a scaphoid-lunate separation. It was treated by fusing three bones in her left hand. That resulted in significant decreases of motion in the left hand as compared to the right hand. The medical care cost $7,868.11. Because of this injury, the Claimant lost the opportunity to earn $5,090.20. The medical bills and lost wages total approximately $13,000.

The Claimant returned to work, but found she was unable to perform the task of her employment. It was not until approximately two years later that she was able to begin working performing tasks that she was comfortable doing. Because her job was that of a clerical and secretarial worker, the weakness in her left hand was such that she was unable to make any significant employee contribution. At the time of her termination in February of 1991, the Claimant was making an annual salary of $16,692. It could be contended that the Claimant could have held a minimum wage job and earned approximately $8,500 per year. Therefore, the injury caused an additional wage loss of the difference between what she was making and a minimum wage job over the past two years, or approximately $16,500.

The Claimant's testimony is clear on the pain that this injury caused. Her testimony is supported by her husband's recollection of the discomfort that the pins created when they rubbed against the cast. The disability that the Claimant encountered during her recuperation, along with the disability that she continues to encounter, is a significant limitation in her daily activities.

The Claimant has proved her case by a preponderance of the evidence. It is determined that she be awarded

400

the sum of $50,000 for compensation for her actual damages as well as for pain and suffering. The matter of setoff and restitution is between the Claimant and the insurance company, but setoff to the State of Illinois has been duly considered in the recommended award.